## First Nat. Bank of Bristow v. Rogers.

### No. 157.    Opinion Filed July 13, 1909.

#### (103 Pac. 582.)

1. **LANDLORD AND TENANT—Renting on Shares—Lien on Crops.** One who raises a crop upon the land of another for a part of the crop is not a tenant, but is a cropper or laborer.

2. **EVIDENCE—Judicial Notice—Seasons and Growth of Crops.** The courts take judicial notice of the seasons and the course of nature, which includes the course of agriculture and the growth of the staple crops of the country.

3. **EVIDENCE—Judicial Notice—Contract to Raise Crop—Time Required.** The courts will take judicial cognizance that a contract to plant, cultivate to maturity, and gather a crop of cotton is a contract for services or labor for a longer period than a month.

4. **MASTER AND SERVANT—Lien for Services—Written Contract —Necessity.** A contract for services or labor for a longer period than one month, that is not in writing, by virtue of the provisions of section 4442 of Mansfield's Digest of the Statutes of Arkansas (Ind. T. Ann. St. 1899, sec. 2909), confers no lien in favor of the laborer upon the products of his labor thereunder.

5. **CHATTEL MORTGAGES—Description—Sufficiency.** A description in a chattel mortgage, which is sufficient to put a third person upon inquiry which, when pursued, will enable him to ascertain the property intended to be included in said mortgage, is good.

6. **CHATTEL MORTGAGES—Description of Crop—Sufficiency.** A mortgage that states the residence and describes the home place of the mortgagor, and states the residence of the mortgagee, and describes certain horses, cattle, and hogs as being located upon the mortgagor's home place, and further describes a crop of cotton not planted at the time of the execution of the mortgage, but afterwards planted and cultivated, as "the product and proceeds of all my 1907 cotton and all my future crops until the above note is paid," where the mortgage was filed for record at the proper place in the recording district where the cotton was located, sufficiently describes the cotton to render the mortgage valid against third persons, although it does not describe the location where it was to be planted and cultivated.

(Syllabus by the Court.)

*Error from Creek County Court; Josiah G. Davis, Judge.*

Replevin by the First National Bank of Bristow against W. M. Rogers and another, in which J. C. Rogers intervened. Judgment for intervener, and plaintiff brings error. Reversed.

On February 7, 1907, one W. M. Rogers made, executed, and delivered to the First National Bank of Bristow, plaintiff in error, his certain chattel mortgage to secure the payment of a promissory note. The mortgage included, among other things, a crop of cotton to be raised by the mortgagor during the year 1907. About the last of February or the first of March, W. M. Rogers made and entered into an oral agreement with J. C. Rogers, defendant in error, whereby he agreed to furnish to J. C. Rogers land, horses, and machinery necessary to plant, cultivate, and gather a crop of cotton, and J. C. Rogers agreed to plant and cultivate and gather said crop of cotton, and was to receive one-half the crop produced by him for his labor. The terms of the contract were executed by both parties thereto. Defendant in error planted, cultivated, and produced for W. M. Rogers, during the year 1907, a crop of cotton on the latter's land located in what was then recording district No. —— of the Indian Territory, but now in Creek County of this state. After the cotton had been gathered, it was divided, and the cotton in controversy was delivered by W. M. Rogers to defendant in error as his share for the labor performed by him. Defendant in error hauled the same to the gin for the purpose of having it baled. After it had been baled, and while it was yet at the gin, plaintiff in error instituted this action in replevin to recover possession of the same under the terms of its mortgage. It brought the action against W. M. Rogers and W. W. Holder, the latter of whom was the manager of the gin where the cotton was when the suit was instituted. Defendant in error intervened in the action and set up his claim to the cotton. The case was tried in the lower court to a jury upon the plea of intervention of defendant in error. Defendant in error obtained a verdict and judgment for the possession of the cotton or its value. From this judgment, plaintiff in error brings this proceeding in error.

*Wm. L. Cheatham* and *Thomson & Smith,* for plaintiff in error, citing: *Von Etten v. Cook,* 54 Ark. 522; *Dano v. Railroad Co.,* 27 Ark. 564; *Burgie v. Davis,* 34 Ark. 179; *Gales Bros. v. Burnett,* 44 Ark. 90.

*C. B. Rockwood,* for defendant in error, citing: *Burgie v. Davis,* 34 Ark. 179; *Watson v. May,* 62 Ark. 435.

HAYES, J. (after stating the facts as above). The cotton in controversy was cultivated and produced, and the contracts under which each of the parties claims his right to same were made, in the Indian Territory before the admission of the state, and the rights of the parties are therefore controlled by the statutes relative to such contracts in force in that jurisdiction at that time.

The only error complained of by plaintiff in error is an alleged error of the trial court in refusing to give the following instruction:

"The court instructs the jury that under the statute of the Indian Territory, which governs in this case, the intervener has not established a laborer's lien because the statutory provisions have not been complied with by the intervener."

At the time defendant in error took possession of the cotton in controversy as his share of the crop, the mortgage of the plaintiff in error was in existence unsatisfied and duly filed as required by law, and he thereby had constructive notice of its existence and the interest of plaintiff in error in the crop; but he contends that his possession of the cotton replevied was the result of a division of the crop between him and W. M. Rogers under the contract and in satisfaction of his laborer's lien on the entire crop, and that such lien is superior to the right of plaintiff in error under its mortgage. One who raises a crop upon the land of another for an agreed share is a cropper or laborer, and not a tenant, and has a lien upon the crop for the share due him, if he has complied with the statute providing for such lien. *Burgie v. Davis,* 34 Ark. 179; *Ponder v. Rhea,* 32 Ark. 534. See, also, *Gardenhire v. Smith,*

39 Ark. 280. Section 4425 of Mansfield's Digest of the Laws of Arkansas (Ind. T. Ann. St. 1899, § 2892), provides:

"Laborers who perform work and labor for any person under a written or verbal contract, if unpaid for the same, shall have an absolute lien on the production of their labor for such work and labor."

Section 4445 (Ind. T. Ann. St. 1899, § 2912) further provided that a specific lien shall be reserved upon so much of the produce raised and articles constructed or manufactured by laborers during their contracts as will secure all the moneys to the value of all supplies furnished them by employers and as will secure all wages or shares due the laborers; but by section 4442 (Ind. T. Ann. St. 1899, § 2909), which is a part of the same chapter as the sections previously referred to, it is provided:

"Contracts for services or labor for a longer period than one month shall not entitle the parties to the benefit of this act unless in writing signed by the parties, witnessed by two disinterested witnesses, or acknowledged before an officer authorized by law to take acknowledgments."

The contract between defendant in error and W. M. Rogers was not in writing, and it is insisted by plaintiff in error that, for this reason, defendant in error had no lien upon the cotton in controversy which was valid as against its mortgage. There is no evidence in the record by which it is disclosed for what length of time the contract for services between defendant in error and W. M. Rogers was to run, further than that under the terms of the contract he was to furnish the labor necessary to plant, cultivate, produce, and gather a crop of cotton on the land of his employer during the year 1907; but courts will take judicial notice of the season and the course of nature, which includes the general course of agriculture and the growth of the staple crops of the country, and it is within the common knowledge of all that to plant, cultivate, produce, and gather a crop of cotton requires a longer period than one month, and of this fact the court will take notice without direct proof thereof. *Person v. Wright & Montgomery,* 35 Ark. 169; *Tomlinson v. Greenfield,* 31 Ark 557;

*Floyd v. Ricks,* 14 Ark. 286, 58 Am. Dec. 374; *Payne v. McCormick Harv. Mach. Co.,* 11 Okla. 318, 66 Pac. 287. A contract for such purpose was a contract for a period longer than one month. Defendant in error was therefore without any lien upon the crop to secure to him the payment of the share he was to receive under the contract, and, when he took the cotton in settlement of his share under the contract, he took it subject to the lien of plaintiff in error's mortgage if such mortgage is valid as to him. That this statute and the rule which it enjoins would likely result often in injustice in cases similar to the case at bar, we recognize, and it seems to have been so recognized by the Legislature of Arkansas, from which state it was adopted by Congress, for, by act of the Legislature of that state of March 22, 1887 (Laws 1887, p. 108), section 4442, *supra,* was amended to read that contracts for services or labor for a longer period than one year, instead of one month, should be in writing in order to entitle the laborer to the benefit of the act; but this amendment to the statute was not adopted by the act of Congress which put in force in the Indian Territory certain statutes of that state, and is not controlling in this case.

Defendant in error insists, however, that, although the requested instruction states correctly the law applicable to the facts, the refusal of the court to give it was not prejudicial error for the reason that plaintiff in error's mortgage is invalid as to him because of the defective and uncertain description of the property purported to be included in the mortgage. At the time the writ was sued out, the employer of defendant in error had divided the crop of cotton produced and gathered by him and had given to him the cotton in controversy in settlement of the share to which he was entitled under the contract, and defendant in error had carried this cotton to the gin, and the same had been ginned, and his name placed thereon. If the mortgage is invalid as to third persons, defendant in error is the owner of the cotton for value, and his right to recover in this action is not dependent upon any lien. A laborer's lien becomes essential to his right to recover only in

the event plaintiff in error has a mortgage lien upon the cotton of which defendant in error had notice at the time he accepted the cotton in controversy in payment of his share of the crop. The property included in the mortgage consists, in addition to the crop of cotton, of a number of cattle, horses, and hogs. The mortgage recites that the mortgagor, W. M. Rogers, resides at his home about eight miles northeast from Bristow, in the Indian Territory, on section 11, township 17 north, range 9 east, and describes all the property, except the crop of cotton, as being located on said place. The crop of cotton, at the time of the execution of the mortgage, had not been planted, nor had any preparation or arrangements been made for the planting thereof; but the mortgage is not invalid for this reason, for section 4749 of Mansfield's Digest of the Statutes of Arkansas (Ind. T. Ann. St. 1899, § 3060) authorizes the mortgaging of crops not planted but to be planted in the future. The mortgage contains no words of description of the place where the crop was to be planted, and the only words of description of the crop contained in the mortgage are as follows: "The product and proceeds of all my 1907 cotton and all my future crops until above note is paid."

Mr. Cobbey, in volume 1 of his work on Chattel Mortgages, p. 204, lays down the general rule as to what is the necessary description of a thing mortgaged in the following language:

"Any description which will enable third persons to identify the property, aided by inquiries which the mortgage itself indicates and directs, is sufficient."

He states as a second rule that any description which can be made certain by the inquiries suggested is good. These rules were quoted with approval by the Court of Appeals of the Indian Territory in *Kaase v. Johnson,* 5 Ind. T. 76, 82 S. W. 680. In that case the property described in the mortgage was described as "279 head of cattle, being 160 head of cows of various colors, from five to nine years old, 89 head of yearling steers and heifers, 30 head of steers, two to three years old, 100 sucking calves, various colors, 4 Durham bulls, three to four years old, and all the in-

crease of said cattle." No description of the place of location of the cattle was given in the mortgage; but the mortgage recited the residence of the mortgagors and the residence of the mortgagees, and was recorded at the place required by the statutes and in the district where the cattle were in fact located. The court held that, although the mortgage failed to describe the location of the cattle, the information given by the mortgage was such as to put one calling to purchase the cattle or to attach the same upon inquiry which would have at once shown what property was included in the mortgage.

In *Johnson v. Grissard,* 51 Ark. 410, 11 S. W. 585, 3 L. R. A. 795, the property was described as "all my crop of corn, cotton, or other produce that I may raise or in which I may have in any manner an interest, in the year 1884, in Faulkner county, Arkansas." The court held that, where the description could be made certain by extrinsic evidence, the record of the mortgage was constructive notice of the mortgagee's lien. In that case the court said:

"It is uncertainty that will not be removed when the conveyance is read in the light of circumstances surrounding the parties at the time it was entered into and their manifest design is considered, that will render a conveyance void."

*Varnum v. State,* 78 Ala. 28, was a prosecution for the removal or sale of mortgaged property. The property covered by the mortgage was described as "my entire crop of every description raised by me or caused to be raised by me annually till this debt is paid." Against an attack upon the mortgage as being void for uncertainty in the description of the crops, intended to be included in it, the court held it valid, and said:

"Whatever force there may be in this objection to the instrument on its face, this alleged uncertainty was capable of being removed, when read in the light of circumstances surrounding the contracting parties at the time of the execution, by extraneous parol identification."

In *Smith v. Fields,* 79 Ala. 335, a mortgage, which described

the property included as "my entire crop of cotton and corn," was held sufficient to put a third person upon inquiry and not void for indefiniteness and uncertainty, since the general descriptive words used in the mortgage could be made definite and certain by parol evidence showing what crop the parties had reference to.

In *Henderson v. Gates,* 52 Ark. 371, 12 S. W: 780, the property mortgaged was designated as "my entire crops of cotton· and corn to be raised by me the present year or contracted by me." The mortgage was held valid as to third parties.

In *Krone & Co. v. Phelps et al.,* 43 Ark. 350, wherein the property mortgaged was described as "all the crop of ten acres of cotton to be grown" by the mortgagor upon a field containing 40 acres in cotton, the mortgage was held void as to strangers for uncertainty; but the facts upon which the rule of that case rests are unlike the facts in the cases previously cited and in the case at bar, for, in that case, which exact 10 acres of cotton out of the mortgagor's 40 acres was intended to be included could not be ascertained by extrinsic evidence.

In the case at bar, as in *Kaase v. Johnson, supra,* the residence of the mortgagor is given, including the exact location of his home place, and also the residence of the mortgagee. The crop of cotton included in the mortgage is all of his cotton for the year 1907. These facts, in our opinion, were sufficient to put a third person upon inquiry, which, when pursued, would enable him to identify the cotton covered by the mortgage. The crop raised by the mortgagor and now in controversy was grown upon the home place described in the mortgage where all of the other property included in the mortgage was described as being located. The mortgage was upon record, and defendant had constructive notice thereof. Its contents furnished him information, which, aided by extrinsic evidence at his command, would have enabled him to ascertain that the cotton in controversy was the product of the crop described in the mortgage, and he is not an innocent purchaser for value.

The refusal of the court to give the instruction was prejudicial error, for which the cause must be reversed.

Dunn, Turner, and Williams, JJ., concur; Kane, C. J., not sitting.