### YELDELL v. HINES.

No. 9403—Opinion Filed July 30, 1918.

(174 Pac. 229.)

Landlord and Tenant — Lease on Shares — Damages to Crop—Tenant's Right of Action.

Where a tenant cultivates and matures a crop of corn under a rental contract providing that he shall pay a portion of the crop as rents and shall gather same and deliver to the landlord his part, the tenant has a right to the possession of the entire crop of corn until same is gathered and divided, and can maintain an action for damages for the destruction or injury to the same.

(Syllabus by Hooker, C.)

Error from District Court, Lincoln County: Chas. B. Wilson, Jr., Judge.

Action by Willie Hines against W. Y. Yeldell. Judgment for plaintiff, and defendant brings error. Affirmed.

Thos. G. Andrews, for plaintiff in error.

Pardoe & Pardoe, for defendant in error.

Opinion by HOOKER, C. This action was instituted by the defendant in error against the plaintiff in error in the justice court to recover damages alleged to have been caused to a corn crop of the plaintiff in error by hogs of the defendant in error, trespassing thereon and consuming the same. Judgment was had in the lower court, and an appeal was taken to the district court, where trial was had and judgment rendered in favor of the defendant in error against Yeldell in the sum of $30, to reverse which an appeal is had here.

The plaintiff in error introduced no evidence at the trial in the lower court, contenting himself by filing a demurrer to the plaintiff's evidence. The basis of his demurrer was that the plaintiff was not the owner of the property alleged to have been destroyed, he being at the time a cropper and not a tenant of his landlord; and it is contended by the plaintiff in error that the crop destroyed was the property of the landlord and not the property of the defendant in error.

The evidence in the case germane to a consideration of the question is as follows:

"Q. You made a deal with Mays whereby you were to farm the land last year, didn't you? A. Yes, sir. Q. He was going to furnish you teams? A. Yes, sir. Q. And he did furnish you a team, didn't he? A. Yes, sir. Q. And he furnished you everything to farm the land with, didn't he? A. Sure. Q. Cultivator, and everything of that kind? A. Which? Q. Cultivator and all implements, everything to farm the land with? A. Yes, sir. Q. He furnished the seed? A. Yes, sir. Q. And you were to farm it? A. Yes, sir. Q. And you was to get half the corn and he was to get the other half? A. I was to put his half on the place. Q. You was to put his half on the place and the other half to be yours? A. I was to put his half in the crib. Q. Put his half in the crib and your half do just as you like, is that right? A. Yes, sir."

The above is the testimony of the defendant in error as to the character of the contract under which he cultivated the land of the owner, Mr. Mays.

The owner testified as follows:

"Q. What was your contract? State what it was. A. Well, I was to furnish the team and feed and plow tools, and he was to just plant the corn and place one-half—I rented the land to plant corn, and he was to put one-half of it in the barn and I told him I would hold him responsible to see about the corn and put it in the barn. Q. That was the terms of the contract? A. Yes, sir. Q. Well, he was to pay—what was the contract or what was you to get for the use of the land; was you to have a contract about that? A. The contract was I was to have the corn put in the crib. Q. For the use of the land? A. For the use of the land. That is the contract, I contracted with him to cultivate this land in good shape and gather the corn and deliver it in my barn on my place there, half of

that corn. The Court: Was there any other terms to the contract? A. He was to deliver the corn. Q. Anything how he was to cultivate it, or anything of that kind? A. He was to cultivate the land in good shape, cultivate it after the overflow, and in case the corn didn't mature he was to cut it and house it in the barn. Q. Was that a written contract or verbal contract? A. Verbal contract. Q. What were you to have to do during the term of his lease, were you to have anything to do with it at all or not? A. No, sir; I had nothing to do with it only to see he worked it. Q. Was there anything said as to what directions, whether you should direct him or not in the manner to do the work? A. Yes, I was to direct him to do the work; he was to plant the corn by my instructions. Q. Well what was the nature, now, of your agreement as to what instructions you were to give him? A. Well, I was to furnish the tools, and he was to plow it and plant it like I told him he was to plant it with a lister. Q. Well, throughout the course of his work? A. He was to cultivate it in good shape. Q. Well, was there anything said as to what directions, if any, you should give him? A. In case he didn't work it after he got it planted I was to work it or have it done and charge it up to him. Q. Was there anything in the contract with reference to what control you had over the work? A. I rented him the ground, and he was to do the work; that is all the contract I had. I couldn't force him to work it. The Court: Did you regard that employment or contract with Hines as a contract whereby you leased the land to him, or were you employing him to work the land for you? A. I rented the land to him: what you call a lease, I guess."

At the conclusion of the evidence, the trial court instructed the jury that the plaintiff below was only entitled to one-half thereof, the landlord being entitled to the other one-half, and that the only question for the jury to determine was the value of the property destroyed and to give the plaintiff judgment for one-half thereof, which the jury did in the sum of $30.

As stated, from this the plaintiff in error has appealed and urged here that, under this testimony, the court should have instructed the jury to have returned a verdict in favor of the defendant below, or should have sustained a demurrer to the plaintiff's evidence, as the evidence discloses that the plaintiff below was a cropper, and, that being true, under the law, the crops remained the property of the owner of the premises until there was a division, and in support thereof plaintiff in error cites 12 Cyc. 979; Bank v. Rogers, 24 Okla. 357, 103 Pac. 582; Moore v. Linn, 19 Okla. 279, 91 Pac. 910.

This court has said, in Gvosdanovic v. Harris, 38 Okla. 787, 134 Pac. 28:

"Where a tenant cultivates and matures a crop of corn under a rental contract providing that he shall pay a portion of the crop as rents, and shall gather same and deliver to the landlord his rents at some place upon the premises, or at some other place, to be designated by him, the tenant has a right to the possession of the entire crop of corn until the same is gathered and divided, and can maintain replevin therefor."

And on page 789 of 38 Okla., on page 29 of 134 Pac., a number of authorities are cited sustaining the text above quoted.

In R. C. L. vol. 8, p. 375, it is said:

"Where the terms of a contract are such as to show that the contracting parties understood and intended that the relation of landlord and tenant should be created thereby, the contract will be a lease, although the landlord is to be compensated for the use of the land by a portion of the crops raised. According to some cases, if, in a contract for the cultivation of land on shares, there are clear words importing a present demise, or that the occupier is to have the exclusive possession of the land, or that he is to pay or deliver the owner's portion of the crops as rent, the relation between then is that of landlord and tenant. * * * Still it has been held that a contract between a landowner and laborer for raising a crop on shares creates the relation of landlord and tenant unless the intention to make them partners or tenants in common with respect to the crop clearly appears."

It is apparent from the testimony of the owner of the premises that he regarded Hines as his tenant, and, where the parties by their own acts and conduct put a construction upon the contract that exists between them, the court will adopt that view if there is ambiguity or uncertainty in the same.

Entertaining this view of the law and the evidence, we find no error prejudicial to the rights of the plaintiff in error. Therefore the judgment of the lower court is affirmed.

By the Court: It is so ordered.