## BLACK, SIVALLS & BRYSON v. LOOFBOURROW.

No. 23720. April 14, 1935.

Bond & Bond, for plaintiff in error.

S. H. Singleton and G. F. Womack, for defendant in error.

PER CURIAM. In this case, on this appeal, the parties appear inversely to the order in which they appeared in the trial court; that is, the defendant in error was plaintiff and the plaintiff in error was defendant, and we shall refer to them as they appeared in the trial court.

J. D. Loofbourrow, the plaintiff below, began this action by the filing of his petition in the district court of Stephens county, on January 29, 1931, in which he charged that Black, Sivalls & Bryson, a corporation, the

defendant below, wrongfully converted to its own use certain personal property, consisting of oil well supplies and equipment, to the damage of the plaintiff in the sum of $3,-466.66, upon which property the plaintiff alleged he had a mortgage lien which was unsatisfied; and prayed judgment against the defendant in the sum of $3,466.66. The defendant, Black, Sivalls & Bryson, answered by way of general denial.

On December 11, 1931, the cause was tried before the court, a jury being waived, and at the conclusion of the evidence and arguments, the court rendered judgment in favor of the plaintiff and against the defendant, Black, Sivalls & Bryson, a corporation, in the sum of $1,900, costs, and interest at 6 per cent. per annum from said December 11, 1931. The defendant filed a timely motion for a new trial, which was overruled by the trial court on said December 11, 1931; exceptions were taken by the defendant, and notice given in open court of intention to appeal to this court. On June 3, 1932, petition in error, with the original case-made duly attached, was filed in this court, and the case is before this court for review upon the assignments of error urged in the petition in error. It was developed by the evidence in the trial court that on February 1, 1928, the plaintiff, Loofbourrow, sold to V. A. Kedney a certain rotary rig, tools, lines, drill pipe, etc., and in payment thereof received $500 cash, and took the note of the said Kedney in the sum of $2,500, which note was of date of February 1, 1928, and was secured by a mortgage of the same date of the said Kedney to the said Loofbourrow covering the same property that was sold to Kedney. Said note was due 60 days after the date thereof. That at the time of the trial below said mortgage indebtedness of Kedney to Loofbourrow was unpaid, except in the sum of $250 paid thereon in the year 1929. The note and mortgage were admitted in evidence. The mortgage was filed in the office of the county clerk of Stephens county on February 5, 1928, at 3 o'clock p. m. Kedney located the oil well rig and outfit purchased by him on section 1, 2 south, 8 west, in Stephens county, having moved the same five or six miles from the place it was when he purchased it. Kedney drilled one well at this location, and then moved over about a quarter of a mile, in the same section, and commenced the drilling of a second well.

It further appears that on January 26, 1929, the said Black, Sivalls & Bryson, a corporation, filed, as plaintiff, a petition in the district court of Stephens county, a case against Fred T. Ealand, V. A. Kedney, et al., in which it alleged that certain of the defendants in that case were indebted to it for material and labor furnished by it to said defendants, which material consisted of wooden oil field tanks, and the labor was furnished in assembling and erecting said tanks; and that the said material and labor was furnished between February 7, 1928, and February 14, 1928, and that said tanks were delivered and erected upon the west half of northwest quarter of section 1, 2 south, range 8 west, Stephens county; that to obtain a lien upon said premises, it did, on June 6, 1928, and within four months after said material and labor was furnished, file a verified statement in the office of the court clerk of Stephens county, containing the amount due it from said defendants for said material furnished and labor performed, and which further showed the names of the owner of the property, the name of the claimant, the description of the property upon which said work was done and materials furnished, subject to said lien, a copy of which statement was attached to its petition. It set up further in its petition that certain other defendants claimed liens upon the said premises, but that such liens were junior and inferior to its lien. It prayed judgment against the defendants to whom it alleged it furnished the material and performed the labor in the sum of $198, interest and costs, and $50 attorney fees, and that its lien be declared a first lien upon said leasehold estate, equipment, and improvements, and that said lien be foreclosed and said leasehold estate, equipment, and improvements be ordered sold and the proceeds applied to payment of its judgment.

On November 12, 1929, said district court in said lien foreclosure case, No. 7844, rendered judgment against Fred T. Ealand, V. A. Kedney, Beaver Oil Company, a common-law trust, and John Carr, R. W. Shaw, and W. A. Graves, trustees of the Beaver Oil Company, a common-law trust, in favor of the said plaintiff in that case, in sum of $218.79 and $50 attorney fees, interests and costs; and further found that certain other of the defendants had furnished material and performed labor on the property described in the said plaintiff's petition, found the amounts due said respective other defendants, that each had a lien, and that said liens be foreclosed, the said property sold, and the proceeds distributed.

The plaintiff below, J. D. Loofbourrow, was not a party defendant in said lien foreclosure action, and the evidence was he knew

nothing about such action until after the property alleged by him to be covered by the mortgage of said Kedney to him had been sold under said lien foreclosure proceedings and removed from said section 1, 2 south, 8 west, Stephens county.

Order of sale was issued in said case No. 7844 on December 6, 1929, and certain of the property claimed by plaintiff, Loofbourrow, to be covered by his mortgage was appraised under direction of the sheriff, and by him sold on December 23, 1929, at the lease located in said section 1, 2 south, 8 west Stephens county, the said Black, Sivalls & Bryson, a corporation, purchasing at said sale two 250-bbl. wood tanks, and W. L. Mauldin, one of the defendants in case No. 7844, purchased 900 feet of 6-inch drill stem; and the remainder of the property, except a steel tool house, was purchased by the plaintiff in that case and the codefendants who were lien claimants therein; which sheriff's sale was confirmed by said district court on March 13, 1930.

The defendant makes seven assignments of error: (1) The court erred in overruling motion for new trial; (2) the court erred in rendering judgment for plaintiff below; (3) the court erred in not rendering judgment for the defendant below; (4) the court erred in overruling demurrer of defendant below to amended petition of plaintiff below; (5) the court erred in overruling motion of defendant below for judgment at the close of the case; (6) the court erred in refusing and ruling out competent and legal evidence on the part of the defendant below; and (7) the court erred in admitting evidence on the part of the plaintiff below over objections of the defendant below. And the defendant states that in view of the fact that the second, third, and fifth assignments of error raise the same question, the same should be discussed together; that these three assignments go to the question of whether the mortgage on which plaintiff's claim is based constituted notice to third persons—that is that the mortgage contained all the elements necessary to constitute notice and put a third person upon inquiry, such as location, ownership, possession, and description of the property; and said three assignments were so presented together in said brief. The defendant calls attention to the fact that the mortgage recites that the mortgagee, J. D. Loofbourrow, was of "Brownwood, Texas," that the mortgage does not state where the mortgaged property is located, and that because the evidence disclosed that both parties thereto were engaged in the business of drilling wells for oil and gas, it may be assumed they did not remain at any one location a great length of time; that their vocation was transitory, hence they moved from place to place.

It is contended by the defendant that the location of the property is not given in the mortgage. It is true that it is not expressly stated that it is so located, but the mortgage, taken and construed as a whole, discloses that it was executed in Stephens county and that the mortgaged property was in said county.

At the conclusion of the evidence and argument of counsel, the court announced that it found the value of the property to be $1,900, and that judgment would be rendered for plaintiff for that amount; and such judgment was rendered.

The defendant in its brief, in addition to the matter of the location of the property not being stated in the mortgage, further asserts that said mortgage does not recite the ownership of said property, or who was in possession of the same, at the time of the execution of the mortgage. The recital in the mortgage as to the ownership and possession is plainly made. Kedney, the mortgagor, guaranteed his ownership and title.

No question is made in this case by the defendant that the property mortgaged was not in Stephens county at the time the mortgage was executed, but the point insisted upon by it is that it was not stated in said mortgage that said property was located in that county; and the question is, the property being situated in that county, and the mortgage describing said property being filed in the office of the county clerk on February 5, 1928, did the same operate as notice to the defendant of the plaintiff's mortgage lien upon said property from the date of said filing? We have in this case the following established facts:

(1) The mortgage in question was properly executed and filed.

(2) Said mortgage gave the names and residences of the mortgagor and of the mortgagee.

(3) The mortgaged property was at the time of the execution of the mortgage in Stephens county, Okla.

(4) That the mortgagor, at the time of the execution of the mortgage was in possession and control of said mortgaged property, and agreed not to "remove same from said county."

(5) The mortgage described both gen-

erally and particularly the property mortgaged.

(6) The mortgage was properly filed according to law in the office of the county clerk of Stephens county, Okla., prior to any material being furnished by Black, Sivalls & Bryson, and before any lien rights attached in their favor or in favor of any of the other lien claimants against said property.

We hold that these established facts were sufficient to put any prospective purchaser, incumbrancer, or creditor upon notice as to the lien of Loofbourrow's mortgage upon said property; and that with diligence any one interested could have ascertained the full facts relative to said property and the mortgage lien thereon.

We do not think the transitory vocation of the mortgagor and mortgagee, referred to by the defendant, has anything to do with the lien of a mortgage after its execution and filing in the office of the county clerk; and as to the transitory use of the mortgaged property, it may be used and moved from place to place in the county where it was located at the time of the mortgage, and wherein the mortgage was filed, at the pleasure of the mortgagor. In the case of the removal of mortgaged property from one county in this state to another county therein, section 11279, O. S. 1931 (sec. 7651, O. O. S. 1921), provides for a refiling of the mortgage in the county to which the removal is made.

Relative to the matter of Black, Sivalls & Bryson being put upon notice as to the status of this mortgaged property, there is the significant fact that Kedney, the mortgagor, was made a party defendant in case No. 7844, and judgment rendered against him in connection with Fred T. Ealand and others, the said Kedney being mentioned as the second-named defendant in that case in the petition. The defendant, therefore, necessarily, as plaintiff in No. 7844, had knowledge, information, and notice of some kind as to some connection with the said Kedney with said property which they asked to have sold in satisfaction of their materialman's lien; and an examination of the chattel mortgage record would have advised said defendant that Kedney had executed a chattel mortgage upon a certain rotary outfit to Loofbourrow, and the record does not disclose that, with this information available, they made any investigation or prosecuted any inquiry to ascertain the claimed rights of Loofbourrow in the oil well drilling outfit which they

caused the sheriff to sell to satisfy their lien for materials furnished, although a casual examination of the mortgage would have disclosed the property covered thereby was, at the least, of the same class; and from the evidence in the case a proper investigation and examination must have convinced it that the property which they caused to be sold was the same identical property described in the mortgage of Loofbourrow. Hillery v. Waurika Nat. Bank, 100 Okla. 34, 226 P. 1051; Scrafford v. Gibbons, 44 Kan. 533, 24 P. 968.

The general rule by which the sufficiency of a description in a chattel mortgage is to be determined is well stated in the case of Smith v. LaFayette & Bro., 29 Okla. 671, 119 P. 979, as follows:

"A description in a chattel mortgage which is sufficient to put a third person upon inquiry, which, when pursued, will enable him to ascertain the property intended to be included in said mortgage, is good."

This rule was again stated and quoted in the case of Aikins v. Huff, 133 Okla. 268, 272 P. 1025, where the following authorities were cited in support thereof.: Wichita Mill & Elevator Co. v. Farmers State Bank, 102 Okla. 83, 226 P. 870; Neal Gin Co. v. Tradesmen's National Bank, 111 Okla. 154, 239 P. 615; Crowl v. Ross, 113 Okla. 291, 241 P. 1105. And in First National Bank of Bristow v. Rogers, 24 Okla. 357, 103 P. 582, in the 6th syllabus, it was held:

"A mortgage that states the residence and describes the home place of the mortgagor, and states the residence of the mortgagee, and describes certain horses, cattle and hogs as being located upon the mortgagor's home place, and further describes a crop of cotton not planted at the time of the execution of the mortgage, but afterwards planted and cultivated, as 'the products and proceeds of all my 1907 cotton, and all my future crops until the above note is paid,' where the mortgage was filed for record at the proper place in the recording district where the cotton was located, sufficiently describes the cotton to render the mortgage valid against third persons, although it does not describe the location where it was to be planted and cultivated."

In First National Bank of Washington v. Haines, 76 Okla. 301, 185 P. 441, it was said:

"It is not necessary that property should be so described in a chattel mortgage as to render it capable of being identified by the written recitals alone. A description which will enable third persons aided by inquiries which the instrument itself suggests, to identify the property, is sufficient.

"After the due filing of a chattel mortgage in the recording office as provided by law, third parties are charged with notice the contents thereof to the same extent as if they had actual notice and are charged with notice of anything in the instrument connected with the description of the mortgaged property, which suggests inquiry as to the identity of the property intended to be mortgaged, and which inquiry, if pursued, would lead to an identification of the property."

And in this case, in addition to record notice, the defendant had notice by the statements of Womack, the attorney for Loofbourrow, who, on the day of sale, appeared at the place of sale and warned and advised prospective bidders of the existence of the mortgage lien upon this property. Mr. Bullard, a prospective purchaser at the sale of said property, when asked why he did not complete his purchase, testified as follows:

"Mr. Womack came down at the time and said there was a mortgage on the rig, and they had not had notice, and any one who bought it would buy it at their peril, and I checked the record and found the mortgage and did not complete the sale."

Mr. Womack testified to the notice given by him at the sale, as has been heretofore set out fully. And the witness Baggett testified he was familiar with the property at the time the mortgage was executed; that he had been a watchman over the property continuously up to and including the date the property was sold to Black, Sivalls & Bryson; and that it was the identical and same property. Bullard, a witness, testified he knew the oil well Imperial Rotary described in the mortgage was the same property which was sold at the sale. Womack testified he knew it was the same property, because he had been looking after Mr. Loofbourrow's business, and was keeping track of the property. Mr. Bond, an attorney for the defendant, testified he bought a part of the property for the defendant and part was bought jointly for his client and other lien claimants.

The seventh assignment of error of the defendant is that the trial court erred in admitting evidence on the part of the plaintiff over the objection of defendant, and the proposition is that such evidence did not prove or disprove any issue in the case; was incompetent, irrelevant, and immaterial, and prejudicial to the rights of the defendant. The defendant then sets out in its brief that Loofbourrow as a witness was asked: "State whether or not you have ever been able to regain possession of the rotary rig and equipment you sold," to which he answered "No, I have not." We are unable to see how the defendant was prejudiced by this question and answer. The trial was before the court. It is not apparent to us that the question and the answer thereto aided the case of the plaintiff or injured that of the defendant. The defendant argues that the plaintiff was not diligent in protecting his rights under his mortgage. The mortgage was executed February 1, 1928, and the question and answer immediately preceding the above question and answer objected to shows that $250 was paid and credited on the note, and the note itself, which was in evidence, shows this payment was made August 1, 1929. The petition of Black, Sivalls & Bryson, in case No. 7844, was filed January 26, 1929, and Loofbourrow was not made a party to that action. Judgment was rendered in case No. 7844 on November 12, 1929; the property was sold by the sheriff in pursuance of said judgment on December 6, 1929; the plaintiff testified that he was making investigations in order to ascertain, if he could, where the outfit was located, but could not find it; and in the latter part of 1930, or sometime during 1931, he ascertained that it had been sold and was gone; and his case in the court below was filed January 29, 1931. The plaintiff appears to have been making an effort to locate the property itself, and the reasonable inference would be that he had in mind the purpose to foreclose his chattel mortgage; and when he could not locate the property itself, he brought this action against the defendant for damages. His cause of action was not barred by any statute of limitations at the time his petition was filed in the trial court. The plaintiff apparently was endeavoring to locate the property upon which he had a mortgage lien, and to show to the court that his action for damages for the conversion of said property had been prosecuted with reasonable diligence.

The defendant also objected to the testimony of the plaintiff relative to the value of the property alleged to have been converted. The measure of damages for the wrongful conversion of personal property upon which one has a lien is regulated by statute. Sections 9986 and 9988, O. S. 1931.

In Hillery v. Waurika National Bank, 100 Okla. 34, 226 P. 1051, it was held:

"Where mortgaged personal property is converted, the measure of the mortgagee's damage is the amount of the mortgage lien remaining undischarged, not exceeding the value of the property."

See, also, Alder v. Chapman, 91 Okla. 196, 219 P. 90.

If the mortgage lien of plaintiff had been discharged, then the judgment lien of the defendant, obtained in the case hereinbefore referred to, would have conferred a right upon the defendant superior to the discharged lien of plaintiff; but prior to such discharge, if there was a conversion of the mortgaged property by the defendant, plaintiff was entitled to damages up to the amount secured by his mortgage lien, not exceeding the value of the property, and in addition thereto a fair compensation for the time and money properly expended in pursuit of the property. There was no testimony as to the expenditure of any money by the plaintiff in pursuit of the converted property, although the plaintiff testified he made an effort to locate it. The evidence at the trial was that the principal sum due on the note, the payment of which was secured by a mortgage on the converted property, was $2,500. The note was of date February 1, 1928, and bore interest at the rate of 10 per cent. per annum from date until paid, and for an attorney fee of $250 in the event of foreclosure. The evidence also showed that only $250 had been paid upon the chattel mortgage indebtedness. The trial was held on December 11, 1931, a little over three years after the due date of the note secured by plaintiff's mortgage, and the damages allowed plaintiff by the trial court for the conversion of the mortgaged property was the sum of $1,900 and costs, with interest at 6 per cent. per annum from the date of the judgment. The amount of plaintiff's recovery was much less than the amount secured by his mortgage lien.

As to the market value of the converted property. the evidence was more than sufficient to justify the amount assessed as damages in the judgment of the trial court.

Finding no reversible error, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys George E. Rider, J. Kenneth Clark, and Reuel Little in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Rider and concurred in by Mr. Clark and Mr. Little, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur.