**FIRST NAT. BANK OF ANADARKO v. HARP.**

No. 19445. Opinion Filed Sept. 9, 1930.

Commissioners' Opinion, Division No. 2.

Morris & Wilhite, for plaintiff in error.

Pruett & Wamsley, for defendant in error.

DIFFENDAFFER, C. This is an action brought by plaintiff bank to recover for wrongful conversion of certain cotton. Plaintiff held a chattel mortgage on the cotton, given by one J. B. Ivie, to secure a promissory note. While the note was unpaid and the mortgage was in force and of record, defendant purchased the cotton from Ivie.

The defense was: First. That there was a general custom of the banks in that vicinity, and especially the plaintiff, to permit their debtors, who had mortgaged cotton to them, to sell and dispose of the cotton covered by such chattel mortgages and account to the banks for the proceeds; and second: that plaintiff had knowledge that the mortgagor was selling the cotton covered by its mortgage, and not accounting for the proceeds, and consequent estoppel by reason of said knowledge and implied permission to sell.

The cause was tried to a jury, resulting in a verdict and judgment for defendant.

The errors complained of are: The introduction of proof of the local custom set out in the answer; an instruction to the effect that if the jury should find and believe from the evidence that there was a general custom among banks of the community, with customers thereof who execute mortgages on their cotton to such banks, to permit the mortgagor to harvest, sell, and dispose of such cotton, and turn in the proceeds thereof on their mortgage, plaintiff could not recover; and instruction given as follows:

"You are instructed, gentlemen of the jury, that if you find and believe from the evidence in the case that at any time prior to the purchase of the last cotton by the defendant, on which the plaintiff held a mortgage, the plaintiff's agent examined the defendant's record at his gin, and ascertained that the defendant was purchasing cotton of J. B. Ivey, and asserted no right, title or interest thereto, then the defendant would not be liable to the plaintiff for any cotton purchased after plaintiff's failure to so notify the defendant of their interest therein."

Under the record in this case, the latter instruction, given over the objection of plaintiff, requires a reversal. The undisputed evidence is, that Ivie raised cotton on two different farms in the years 1926, that being the year the cotton in controversy was produced. The cotton on his home place was covered by plaintiff's mortgage, while that on leased premises was not. He produced about the same amount on each place and sold all of it, except two bales, to defendant.

It will be observed that the instruction makes no distinction between cotton covered by the mortgage and that not covered. Certainly plaintiff would not be bound by knowledge that Ivie was selling cotton to defendant which was not covered by its mortgage.

There is evidence tending to show that plaintiff's agent was at defendant's gin and examined defendant's record sometime between the 15th and 20th of September, 1926. At that time the defendant had purchased one bale of cotton from Ivie. But there was nothing to indicate whether the cotton so sold was covered by plaintiff's mortgage, and nothing to show whether it had been grown on the home place or on the leased premises. This bale had, in fact, been grown on the home place of Ivie, and was covered by plaintiff's mortgage, but that fact was not made known to plaintiff until the trial. Ivie refused to inform defendant until he testified at the trial which bales of cotton he had sold to him were grown on the home place.

There is also some evidence tending to show that plaintiff's agent went to defendant's gin and checked the records sometime between the 15th and 20th of January, 1927. But at that time no other cotton covered by plaintiff's mortgage had been sold. All the balance thereof was sold between the 1st and 25th of February, 1927. Between September 15, 1926, and February 1, 1927, Ivie had sold defendant some seven or eight bales of cotton not covered by plaintiff's mortgage. The instruction complained of clearly told the jury that if plaintiff's agent had, at any time before the sale of the last bale of cotton, ascertained that defendant was purchasing cotton from Ivie, and asserted no right, title or interest thereto, plaintiff could not recover for cotton purchased thereafter without regard to whether the cotton so sold was covered by its mortgage, thus requiring plaintiff, before it could recover, to assert claim to cotton not covered by its mortgage.

The instruction is erroneous for the further reason that it placed a greater burden upon plaintiff than the law requires. There is no claim of written or express oral consent to the sale of the cotton covered by its mortgage by plaintiff.

In Phelan v. Barnhart Bros. & Spindler, 75 Okla. 49, 181 Pac. 718, it was held:

"Where oral consent is relied upon as a defense in an action for the conversion of the mortgaged property, the evidence as to such consent must be clear, positive, and unequivocal."

And in the body of the opinion, it was said:

"Consent is not to be implied merely from equivocal conduct, or from the fact that the mortgagee remained silent when told of an intended sale; however, if the mortgagee remains silent in the presence of an actual sale, or, not being actually present, allows the mortgagor to appear as the owner and has knowledge of the mortgagor's intention to sell, and the purchaser relies thereon in ignorance of the truth, under these circumstances, the law of estoppel would apply."

In the instant case, there is no evidence, aside from mere silence, to show an implied consent. Nor is there any evidence tending in the least to show silence of plaintiff in the presence of an actual sale, nor that plaintiff, not being actually present, allowed the mortgagor to appear as the owner of the mortgaged cotton with knowledge of his intention to sell, and there is no evidence whatever that defendant relied thereon in ignorance of the truth.

The instruction given cannot be justified upon the theory of ratification, even though plaintiff's agent had learned that the bale of cotton sold September 15, 1926, was one covered by its mortgage.

In 11 C. J. p. 627, the rule is stated as follows:

"Ratification will not necessarily be inferred from the mortgagee's mere silence after learning that the property has been disposed of, or from equivocal acts or statements made after acquiring such knowledge."

The assignment of error relative to the introduction of evidence of a local custom and the assignment of error on the instruction covering this defense are presented together.

From a careful examination of all the authorities cited, we are convinced that the defense of custom is not available to defendant in the instant case. The chattel mortgage, among other things, provides:

"or if said property, or any part thereof, is sold or removed from said premises, then and thenceforth it shall be lawful for the said party of the second part * * * to take said property wherever the same may be found, and dispose of same at public auction or private sale."

Section 2215, C. O. S. 1921, prohibits the sale of mortgaged personal property by the mortgagor, without the written consent of the holder of the mortgage, and makes the violation thereof a felony. It has been held that this section does not prevent the mortgagee from constituting the mortgagor his agent to sell the property, nor from orally consenting to such sale. But we are not cited to any authority which holds that such appointment or consent may be shown by usage or custom. As heretofore pointed out, where consent is relied upon, the evidence of such consent must be clear, positive, and unequivocal. Phelan v. Barnhart, supra.

In Neal Gin Co. v. Tradesmen's Nat. Bank, 111 Okla. 154, 239 Pac. 615, it is held:

"Evidence of custom or usage is not admissible to vary, add to, or contradict the terms of a plain, definite, and unambiguous written instrument, or to bind a party thereto, or impose a duty or obligation upon a party to such contract not incorporated therein."

The above case is one almost identical with the present case. There is some language used therein which defendant contends holds by inference that a mortgagee having knowledge of such a custom at the time the contract was entered into would be bound thereby. We think the express holding in the case is against this contention.

"Where the terms of an express contract are clear and unambiguous, they cannot be varied or contradicted by evidence of custom or usage, and this is true whether the contract is written or verbal." 17 C. J. 508, par. 77.

The text is supported by numerous authorities cited from the Supreme Court of the United States and other federal courts, and also from almost every state. There seems to be no exception to the rule.

Among the cases cited is Van Camp Packing Co. v. Hartman, 126 Ind. 177, 25 N. E. 901, wherein the rule is clearly stated as follows:

. "The rule admitting evidence of a usage is always subject to this limitation, however, that proof will never be allowed to establish a usage which is repugnant to, or which controls, displaces, or alters, the legal effect of any of the express terms of a contract. A usage cannot be appealed to for the purpose of eliminating terms from a contract, and ingrafting upon it others different from or inconsistent with those displaced; nor will proof be heard of a usage that is contrary to public policy, or good morals, or to the common or statute law."

This rule has been applied by this court in an action similar to the instant case. Neal Gin Co. v. Bank, supra.

Alleged customs or usages are generally held bad where they conflict with the criminal or penal statutes of the state. 17 C. J. 476.

For the errors pointed out, the judgment should be, and is, hereby reversed, and the cause is remanded for a new trial.

BENNETT, HALL, HERR, and EAGLETON. Commissioners, concur.

By the Court: It is so ordered.