## HARP v. FIRST NAT. BANK OF ANADARKO.

No. 22545. Nov. 27, 1934.

Pruett & Wamsley, for plaintiff in error.

Morris & Wilhite, for defendant in error.

PER CURIAM. This is an action for the conversion of cotton brought by the First National Bank of Anadarko, Okla., against Joe Harp. The parties to the action will be referred to as they appear in the court below.

J. B. Ivie executed and delivered a chattel mortgage to the plaintiff bank on April 28, 1926, covering certain personal property "owned entirely by and now in the possession of said party of the first part, at his home on the north half of the northeast quarter of section 17, township N. 8, range 10 W. I. M., Caddo county, Okla." Following the description of certain stock and farming implements is the following: "All crops grown and raised by me or anyone for me on the north half of the northeast quarter of section 17, township 8 N. range 10, W. I. M." The mortgage was filed for record in the office of the county clerk of Caddo county, Okla., on April 30, 1926.

At the trial of the cause it developed that the home place was incorrectly described, and that its correct description was the north half of the southeast quarter of section 17, township 8 north, range 10, W. I. M. The north half of the northeast quarter was a brush pasture not owned by the mortgagor. The mortgagor, J. B. Ivie, had about 14 acres of cotton growing on his home place and about the same acreage on leased land. The cotton grown on both tracts was sold to the defendant, Joe Harp, who operated a cotton gin in the vicinity. A representative of the bank called at the gin in the early fall of 1926 for the purpose of checking the cotton ginned for J. B. Ivie, at which time one bale had been ginned, which it later developed was ginned from the home place, but which was thought at the time by the mortgagee to have been grown on the leased land. The bank's representative called at other times in January and February of the following year. He advised the defendant, Joe Harp, on his visit in the fall of 1926, that the bank was having trouble with the account of J. B. Ivie.

At the conclusion of the evidence, the court in one of its instructions limited the inquiry by the jury to the value of the cotton picked, ginned, and sold to the defendant, Harp. The jury returned a verdict for the plaintiff for $150, upon which judgment was entered; and from that judgment the defendant appeals.

1. The defendant complains (1) of errors at law occurring at the trial, and the overruling of his demurrer to the plaintiff's evidence, which errors he argues together; and (2) error in the trial court's instructions. Plaintiff's action is based on the principle that a sale of chattels by a mortgagor to another, who has notice of the mortgage, either actual or constructive, works a conversion of the chattels so sold, for which the mortgagee may bring action. Bank of Ralston v. Gaskill, 44 Okla. 728, 145 P. 1131; Wichita Mill & Elevator Co. v. Farm State Bank of Tipton, 102 Okla. 83, 226 P. 870; Wichita Mill & Elevator Co. v. National Bank of Commerce, 102 Okla. 95, 227 P. 92.

2. But it is contended by the defendant, Harp, that he was an innocent purchaser for value of the cotton; that the description of the cotton crop given in the mortgage, "planted or raised by me or any one for me on the north half of the northeast quarter of section 17, township 8 N., range 10, W. I. M.", did not give him constructive notice that the cotton sold by J. B. Ivie and grown on the north half of the southeast quarter of said section, township, and range was covered by the mortgage to the bank; in other words, his contention is that the mortgage was insufficient to impart notice, not because of the uncertainty in the location of the crop purported to be covered thereby, but, on the

contrary, for exactly the reverse reason: That the description was definite, and the cotton was not located on the land described. The logic of that contention is inescapable, unless the mortgage in question contains other facts suggesting inquiry, which, if pursued, would definitely disclose that the cotton in controversy was covered by the mortgage. The defendant, in his brief, concedes that the court must look to the whole instrument, and take into consideration all the clauses of the mortgage which have any bearing on the description of the property mortgaged thereby in determining whether or not the property in question was covered by the mortgage, or whether there appear on the face of the mortgage facts sufficient to suggest inquiries, which, if pursued, would have disclosed the property was so covered.

In the case of First National Bank of Bristow v. Rogers, 24 Okla. 357, 103 P. 582, we said:

"A description in a chattel mortgage which is sufficient to put a third person upon inquiry, which, when pursued, would enable him to ascertain the property intended to be included in said mortgage, is good."

This principle we approved in the following cases: Neal Gin Co. v. Tradesmen's National Bank, 111 Okla. 154, 239 P. 615; Wichita Mill & Elevator Co. v. Farmers State Bank of Tipton, 102 Okla. 83, 226 P. 870; Smith v. Lafayette Bros.. 29 Okla. 671, 119 P. 979; Hillery v. Waurika Nat. Bank, 100 Okla. 34, 226 P. 1051.

The chattel mortgage in this case identifies the north half of the northeast quarter as the "home place" of the mortgagor, where the other personal property of the mortgagor was located; and it was, therefore, a sufficient description of the cotton to put the defendant on inquiry. Had that inquiry been made, it would have disclosed that the north half of the southeast quarter was actually the home place of the mortgagor, and that both the cotton crop in question and the other personal property were located thereat. It would have disclosed that the north half of the northeast quarter, in the same section and about a qaurter of a mile distant, was not even in cultivation, but was a woods pasture, and not the property of the mortgagor.

Furthermore, the defendant cannot successfully claim the status of an innocent purchaser for value without notice, because when the agent of the bank checked his gin records and advised him he was having trouble with the account of J. B. Ivie, that fact, together with the language of the mortgage, should have put him on inquiry, because the only account a bank usually has with a farmer involving cotton is a loan, with chattel mortgage security.

3. The defendant also contends that his demurrer to the plaintiff's evidence should have been sustained because the note secured by the chattel mortgage was not offered in evidence. The defendant failed to verify his answer, and, consequently, the execution of the note attached to plaintiff's petition was admitted; and the trial court correctly so found. The action being not on the note, but for the conversion of the cotton embraced in the chattel mortgage, and the execution both of the note and the chattel mortgage being admitted by the filing of an unverified answer, the production of the note was unnecessary. Gillespey v. Denny, 89 Okla. 270, 215 P. 430; Neu v. J. I. Case Threshing Machine Co., 157 Okla. 258, 11 P. (2d) 482. The mortgage was introduced in evidence; and the plaintiff's evidence showing the amount due the bank on the indebtedness secured is not contradicted, and is considerably in excess of the value of the converted cotton found by the jury. The measure of damages where mortgaged personal property is converted is the amount of the mortgage lien remaining undischarged, not exceeding the value of the property. Hillery et al. v. Waurika National Bank, 100 Okla. 34, 226 P. 1051. The introduction of the mortgage was necessary, as it was also necessary to establish by competent proof the indebtedness secured thereby, because a recovery in excess of that indebtedness could not be had from the defendant. The record clearly shows that requirement was met by the plaintiff.

4, 5. The defendant pleaded ratification by the bank of the sale of the cotton to the gin, and offered evidence to the effect that an agent of the bank made several inspections of the gin records of the defendant, and, knowing that the mortgagor was selling cotton, made no protest to the defendant. In this record it appears that the mortgagor raised cotton upon leased land not covered by the mortgage and upon his home place, which cotton was covered by the bank's mortgage; and the testimony of the bank's agent was to the effect that on his first visit to the cotton gin, he was of the opinion that only the cotton from the leased land had been ginned, because that cotton was picked first. However, this is the second appeal of this case to this court. The style of the case on the first appeal was "First National

Bank v. Harp", and the opinion is reported in 144 Okla. 219, 291 P. 116. The record on the questions of ratification and estoppel, relied on by the defendant in this case, are not materially different from the record in the first case. When the case was before us previously, we called attention to our holding in the case of Phelan v. Barnhart Bros. & Spindler, 75 Okla. 49, 181 P. 718, as follows:

"Where oral consent is relied upon as a defense in an action for the conversion of the mortgaged property, the evidence as to such consent must be clear, positive, and unequivocal."

And we further said:

"In the instant case there is no evidence, aside from mere silence, to show an implied consent. Nor is there any evidence tending in the least to show silence of plaintiff in the presence of an actual sale, nor that plaintiff, not being actually present, allowed the mortgagor to appear as the owner of the mortgaged cotton, with knowledge of his intention to sell; and there is no evidence whatever that defendant relied thereon in ignorance of the truth."

We have held in many cases that where the facts on a second appeal are practically the same as on a first appeal, the decision of the first appeal is the law of the case in all its subsequent stages, and will not be reviewed on second appeal. Pacific Mutual Life Insurance Company of California v. Colie, 80 Okla. 1, 193 P. 735; Board of Education of Independent School District No. 11, Osage County, v. Philadelphia Fire & Marine Insurance Co., 156 Okla. 7, 9 P. (2d) 737; Oklahoma City Electric Gas & Power Co. v. Baumhoff, 21 Okla. 503, 96 P. 758; St. Louis & S. F. R. Co. v. Hardy, District Judge, 45 Okla. 423, 146 P. 38.

For the reasons foregoing, we find no error in overruling defendant's demurrer to the evidence of plaintiff.

Complaint is made of certain instructions given by the trial court, particularly that instruction limiting the inquiry by the jury to the value of the cotton converted. In view of the record, which we have carefully examined, and the views expressed by us on the first appeal of this case, the trial court did not err in so instructing the jury. We think no error requiring reversal was committed in giving the instructions locating the cotton on the home place under the evidence in the record.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys E. R. Jones, Irwin Donovan, and Charles P. Gotwals in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Jones and approved by Mr. Donovan and Mr. Gotwals, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.