Glenn J. SMITH, Bess L. Smith, El Gato Investment Company, a dissolved corporation, and C. E. Watson, Ethel Windsor Watson and Pauline Parrish, Successor Trustees of El Gato Investment Company, a dissolved corporation, and not individually, Plaintiffs in Error,

v.

O. O. OWENS, C. E. Watson, Ethel Windsor Watson and Pauline Parrish, individually, Defendants in Error.

No. 39663.

Supreme Court of Oklahoma.

July 23, 1963.

As Corrected Nov. 4, 1964.

Rehearing Denied Nov. 4, 1964.

Application for Leave to File Second Petition for Rehearing Denied Jan. 5, 1965.

**676**

N. E. McNeill, Jr., R. H. Wills, Jr., R. H. Wills, Sr., Tulsa, for plaintiffs in error, Glenn J. Smith and Bess L. Smith.

Fenelon Boesche, R. B. McDermott, T. H. Eskridge, F. D. Hettinger, D. E. Hammer, R. J. Scott, of Williams, Boesche & McDermott, Tulsa, for plaintiffs in error, El Gato Investment Company, a dissolved corporation, and C. E. Watson, Ethel Windsor Watson and Pauline Parrish, successor trustees of El Gato Investment Company, a dissolved corporation, and not individually, and defendants in error, C. E. Watson, Ethel Windsor Watson and Pauline Parrish, individually.

Hudson, Hudson, Wheaton, Kyle & Brett, Tulsa, for defendant in error, O. O. Owens.

PER CURIAM.

The case of Owens v. El Gato Investment Company, Okl., 332 P.2d 22, involved an action wherein El Gato Investment Company, hereinafter referred to as El Gato, brought an action against O. O. Owens to recover damages for breach of a land purchase contract. Owens counter claimed for specific performance and for cancellation of deeds to pendente lite purchasers. The trial court rendered judgment against Owens. On appeal we re-versed the trial court's judgment and remanded the same.

In reversing the judgment of the trial court, we held that Owens was entitled to specific performance of the contract and to have record title to the property involved quieted in his name. Upon the mandate being spread of record, Owens filed a motion with the trial court to set the cause for further hearing. The order setting the cause for hearing contained, inter alia, the following language:

"All parties appearing stipulate and agree that the trial court should, in conformity with the opinion rendered by the Supreme Court of Oklahoma, enter its order granting to defendant O. O. Owens a new trial in this cause, and it was in open court stipulated by all persons appearing that said new trial should be limited to the determination of the issues to be presented upon an accounting between the parties hereto."

This appeal involves the judgment of the trial court rendered in the accounting feature of the controversy after the case of Owens v. El Gato Investment Company (332 P.2d 22) was remanded to the trial court. To understand the issues in the present appeal, pertinent facts in the original action should be reviewed.

On June 16, 1938, Owens entered into a written contract with El Gato to purchase a tract of land in the City of Tulsa for $49,-350.00. The tract was then under lease to Barall Food Stores at a monthly rental of $500.00 and said amount was to be paid to El Gato and to be applied to the payment of taxes, interest and the balance to the purchase price. After the lease to Barall Food Stores expired at the end of December, 1939, Owens and El Gato orally agreed that the original contract be amended and that Owens would pay $200.00 per month. Owens made monthly payments of $200.00, the last one being made in August, 1941. On October 27, 1941, El Gato served "Notice of Termination of Contract" on Owens and on October 29, 1941, filed its action

against Owens to recover $10,000.00 against Owens in liquidated damages. By an amended petition, El Gato sought $19,-405.29 in damages against Owens for breach of the contract to purchase.

In September, 1942, El Gato was dissolved and by order of the District Court of Tulsa County, Pauline Parrish and Mr. and Mrs. Watson, who were members of El Gato's Board of Directors, were appointed trustees of the dissolved El Gato. In January, 1946, Mrs. Parrish and the Watsons conveyed the property to Smiths for $36,625.00. On March 24, 1948, by order of the trial court, Pauline Parrish, Mr. and Mrs. Watson and Mr. and Mrs. Smith were made defendants in the action.

Due to delays occasioned by disposing of preliminary pleadings, Owens first pleaded to the merits of the case on March 24, 1948, in which he answered that he was willing to perform the contract and tendered the sum of $2,666.60 "or any other sum, larger or smaller, found by the court to be the accurate amount due." On the same day, Owens moved the court to make Mrs. Parrish and Mr. and Mrs. Watson, who are successor trustees of El Gato, a dissolved corporation, and Mr. and Mrs. Smith, who purchased the property in 1946, additional parties. Owens moved to make the Watsons and Mrs. Parrish parties not only as trustees but in their individual capacity.

Several other pleadings were filed and in 1956 the trial court rendered judgment against Owens and said judgment was reversed by this Court in 1958 in Owens v. El Gato Investment Co., supra, as heretofore set out. After the cause was remanded and on further hearing the trial court filed its findings of fact and conclusions of law and rendered judgment accordingly. The trial court, inter alia, found that (1) the total amount due on the contract on October 27, 1941, from Owens to El Gato was $48,724.17; (2) El Gato, Mrs. Parrish and Mr. and Mrs. Watson, successor trustees of El Gato, a dissolved corporation, were in possession of the property involved from October 27, 1941 to January 17, 1946,

and the reasonable rental value of the property and interest thereon for that period was $48,262.73; (3) Mrs. Parrish and Mr. and Mrs. Watson, as successor trustees, and not individually, were liable to Owens for the rental of the property as of August 25, 1960, with interest thereon, in the sum of $176,792.82; (4) the $48,724.17 balance due from Owens on the purchase price should be applied against the $176,792.82, leaving a balance of $128,068.65; (5) Mr. and Mrs. Smith were liable to Owens for the rental value of the property from January 17, 1946 to August 25, 1960, with interest thereon, in the sum of $126,051.66; (6) El Gato and its successors had paid $4,194.12 in ad valorem taxes and Mr. and Mrs. Smith had paid $18,298.23.

The trial court further found that after October 27, 1941, neither El Gato nor its successors would have accepted a payment from Owens upon the principal or interest owed upon the purchase price and would not be entitled to recover any interest upon the purchase price since that date; and that since El Gato and its successors and Mr. and Mrs. Smith did not act in good faith and in the honest belief that they were the owners of the property, the doctrine of unjust enrichment would not apply to Owens and they would not be entitled to credit for the ad valorem taxes, totaling some $23,-492.35, paid upon the property.

On August 25, 1960, the trial court rendered judgment in favor of Owens against El Gato, Mrs. Parrish and the Watsons as successor trustees, and not as individuals, and Mr. and Mrs. Smith in the sum of $126,051.65, and against El Gato and its successor trustees, and not as individuals, in the sum of $2,106.99, and decreed that Owens was the owner of the property and entitled to immediate possession.

Briefly stated, the judgment appealed from, decreed that Owens was entitled to the reasonable rental of the property with interest thereon, from October 27, 1941 to August 25, 1960, which amounted to approximately $176,792.82; that Owens should not pay interest on the balance of

the purchase price, (being $48,724.17) from October 27, 1941, but said balance should be applied against the $176,792.82; that El Gato and the Smiths would not be entitled to credit for approximately $23,492.35 paid for ad valorem taxes upon the property from October 27, 1941 to August, 1960; that Owens should have immediate possession of the property and title quieted in his name.

Mr. and Mrs. Smith filed their petition in error against Owens and Mrs. Parrish and the Watsons individually. El Gato and the Watsons and Mrs. Parrish, as successor trustees and not individually, filed their petition in error naming the same defendants in error set forth in Mr. and Mrs. Smith's petition in error but complain only as to the judgment rendered in favor of Owens. However, for the purpose of clarity, we will consider all specifications of error together as they relate to the same subject manner. El Gato, and its successor trustees, Mrs. Parrish and Mr. and Mrs. Watson, will be referred to as El Gato; and Mr. and Mrs. Smith will be referred to as Smiths, unless otherwise indicated.

It is first contended that under the record, which includes the record on the former appeal, Owens was not, and is not now, entitled to specific performance of the contract. In this connection it is urged that the former opinion (Owens v. El Gato Investment Co., 332 P.2d 22) is manifestly grossly erroneous and unjust, and, therefore should be reviewed and reversed.

■ In considering this contention, we find the general rule is found in the case of Harp v. First Natl. Bank of Anadarko, 169 Okl. 548, 37 P.2d 930, wherein it was held:

"Where the facts on a second appeal of the case are practically the same as on the first appeal, the decision of the first appeal is the law of the case in all subsequent stages, and will not be reviewed on second appeal."

To the same effect, see Amerada Petroleum Corporation v. Elliff, 171 Okl. 38, 41 P.2d 850; Ada Coca-Cola Bottling Co. v. Asbury, 206 Okl. 269, 242 P.2d 417; Oklahoma City Electric, Gas & Power Co. v. Baumhoff, 21 Okl. 503, 96 P. 758; Board of Education of Independent School Dist. No. 11, Osage County v. Philadelphia Fire & Marine Ins. Co., 156 Okl. 7, 9 P.2d 737; Pacific Mut. Life Ins. Co. of California v. Coley, 80 Okl. 1, 193 P. 735; Safeway Stores, Inc. v. Fuller, 193 Okl. 237, 142 P.2d 849. However, it is urged that the general rule is not applicable herein but the rule of law announced in the case of Wade v. Hope & Killingsworth, 89 Okl. 64, 213 P. 549, should be applied under the facts in the case at bar. In that case we held:

"The courts uniformly hold that an appellate court may review and reverse its former decision in the same case where it is satisfied that gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision."

and Carter Oil Co. v. Eli, 164 Okl. 273, 23 P.2d 985; and Powell v. United Mining & Milling Co., 107 Okl. 170, 231 P. 307.

■ It is not denied that the record before us is the record presented on the former appeal with the addition of all pleadings filed subsequent to the spreading of the mandate of record and the testimony of the witness Sears, taken on the trial of the accounting feature, and whose testimony related solely to the rental value of the property over the entire period.

When we examine the proceedings in this Court, we find all questions raised on the former appeal were ably briefed; the matter was orally argued and the opinion was promulgated only after detailed consideration and exhaustive study was made of each question presented; the opinion is detailed; it answers each question or contention asserted and cites the law applicable to each contention. A petition for rehearing was duly filed together with a brief in support thereof, and the same was considered by this Court and denied. An exam-

ination of our former opinion does not disclose that the same is not correct and we therefore adhere thereto. See Essley v. Mershon, Okl., 262 P.2d 417; Grand River Dam Authority v. Grand-Hydro, 200 Okl. 157, 201 P.2d 225; First Nat. Bank of Okmulgee v. Gum, 146 Okl. 53, 293 P. 188; and Kelly v. Okmulgee Gas Co., 128 Okl. 237, 262 P. 649.

The above holding automatically disposes of the contention of those adverse to Owens that under the record he is not entitled to specific performance and the same will not be further discussed.

Before considering this cause on its merits after the same was remanded to the trial court for further proceedings, we should be mindful of certain salient facts which are: El Gato filed its original action against Owens on October 29, 1941, to recover damages for breach of a contract to purchase land; prior to March 24, 1948, all the pleadings filed by Owens related to the damage aspects of the litigation; on March 24, 1948, Owens filed his answer and cross-petition concerning his rights for specific performance of the contract and tendered $2666.60, "or any other sum larger or smaller found by the court to be the accurate amount due"; El Gato and Smiths paid all the ad valorem taxes on the property amounting to approximately $23,492.35; under the contract of purchase Owens was liable for the taxes but made no offer to pay them nor did he object to their being paid by El Gato or Smiths; the trial of the original action commenced on December 1, 1953, and ended in January, 1954, and judgment was rendered in June, 1956. In May, 1958, the original cause was orally argued before this Court and the same was submitted upon the records and briefs. In July, 1958, the original opinion was promulgated by this Court. On retrial, the judgment of the trial court was entered on August 25, 1960.

The cross petition of Owens, which prayed for specific performance of the contract and which was granted on appeal, constitutes an action of equitable cognizance. In 7 A.L.R.2d, page 1211, it is stated:

"When specific performance is granted of a contract to convey real property, the court will enforce the equities of the parties in such manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract. It will compensate the purchaser for any loss of the use of the property during the delay by awarding him the rental value of it, or the net rents and profits of it, for the period. It will compensate the vendor for any loss of the use of the purchase money during the delay by awarding him the appropriate interest for the proper period. To either party it will give credit for such expenditures in relation to the property, or otherwise occasioned by the delay, as should be borne by the other. But it will not allow a party to profit by his own wrong, and therefore will not award the party in default any balance of rental above interest or interest above rental as the case may be. Accordingly, where a purchaser seeks specific performance of a contract to sell realty, the vendor having defaulted and retained possession, he may elect to claim also the rental value, or rents and profits, of the property during the delay, as against which the vendor is entitled to set off interest on the unpaid purchase money, but not to recover any excess thereof."

In the same volume, at page 1206, it is stated:

"The compensation awarded as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages. The complainant affirms the contract as being still in force and asks that it be performed. He cannot have it both ways, performed and broken. The situation is simply that, if the court orders it to be performed, the decree must as nearly as possible order it to be performed ac-

cording to its terms, and one of those terms is the date fixed by it for its completion. This date having passed, the court, in order to relate the performance back to it, equalizes any losses occasioned by the delay by offsetting them with money payments. Often the result is more like an accounting between the parties than like an assessment of damages."

Since none of the parties are entitled to legal damages, this Court must determine the equities of the parties in such manner as to put them as nearly as possible in the position they would have occupied had the contract of the parties been consummated when it should have been in an action which has been in litigation for approximately nineteen years.

■ We will first consider the proposition that the trial court erred in not adjudging that Owens, in addition to being liable for $48,724.17, which was admitted by the parties to be the balance of the purchase price in October, 1941, was also liable for interest on said purchase price from October, 1941, to date of judgment.

In this connection, the trial court found that after October 27, 1941, neither El Gato nor its successors would have accepted sums either upon the principal or interest owed upon the purchase price after said date.

In the former opinion we said:

" * * * As El Gato did not proceed properly in its attempt to terminate the contract and give Owens a reasonable time to pay the balance he owed it thereunder, before filing this action, Owens' tender of performance, after the filing of the action, should have been accepted; * * *."

■ In Liberty Natl. Bank of Weatherford, Okl. v. Semkoff, 184 Okl. 18, 84 P.2d 438, we held:

"A valid legal tender made by a debtor and refused by a creditor does not operate as a satisfaction of the debt; the effect of such tender when maintained being merely to discharge the debtor from liability for interest accruing subsequent to the tender and costs afterward incurred where the recovery does not exceed the amount of the tender."

The record discloses that the original case was filed in October, 1941, and until Owens filed his answer and cross petition on March 24, 1948, all of the pleadings filed by Owens related to the question of damages. At no time prior to March 24, 1948, did Owens file any pleadings which would indicate that he was entitled to specific performance. When he did file his cross petition for specific performance, he tendered $2,666.60, "or any other sum larger or smaller found by the court to be the accurate amount due."

■ Owens cites the case of Alfrey v. Richardson, 204 Okl. 473, 231 P.2d 363, as authority for the proposition that he should not be charged with interest on the purchase price. In that case the purchaser was in possession of the property and making payments to the grantor at the time the grantor conveyed to a different grantee who had notice. The Court there found that the grantee would not have accepted the agreed purchase price from purchaser had a formal tender thereof been made, and that therefore, under the circumstances of that case, interest would not accrue on the purchase price after the making of such tender as in fact was made.

In the instant action Owens tendered the sum of $2,666.60 which is at least several thousand dollars less than he actually owed on the contract at the time the tender was made in his pleadings on March 24, ·1948. Owens did not explain the manner in which he computed the amount of the tender made and it is not possible to reconcile the amount of the tender from the record. A careful analysis of the decision in Alfrey v. Richardson, supra, reveals that it does not sustain Owens' position. We determine that he is liable for the $48,724.17 he owed by admission of the parties on October 27, 1941, together with interest from that date

to such date as any judgment hereafter to be rendered in the case shall become final. See the case of Lasoya Oil Co. v. Zulkey, 40 Okl. 690, 140 P. 160, wherein we held that a party making a tender in the trial of a cause for the purpose of doing equity is bound by such tender.

We conclude that the trial court erred in adjudging that Owens, in addition to being liable for the $48,724.17, was not liable for interest to the date that his tender was made, to-wit: March 24, 1948. We therefore hold that Owens was liable for interest at the rate of five percent (5%), as provided in the contract, to March 24, 1948.

■ It is next contended that the trial court erred in not holding that Owens was liable for the taxes upon the property, in the total approximate amount of $23,492.35, for the period of time between October, 1941, and August 25, 1960, and for interest on each such payment of taxes included in said sum, at the legal rate of six percent (6%), from the time of payment to the date of said judgment.

In this connection the trial court found that El Gato and the Smiths did not in good faith pay the taxes in the belief that they were the true owners of the land.

Under the terms of the contract, Owens was obligated to pay the taxes. This is not refuted. Owens argues however, that El Gato and the Smiths asserted title to the property and had possession thereof; that they had full and complete knowledge of the facts and his rights under the contract; that their conduct was wrongful and they were not acting in good faith.

Owens admitted that under the contract that the taxes would be adjusted when final settlement was made and would be charged against the contract; that if the taxes became due before the deal was closed and they paid them, they would charge them to his account; that it was just a matter of accounting on final settlement of reimbursing and the amount paid in taxes would draw interest from the date they paid them until the final settlement.

■ In the instant action, El Gato and the Smiths have paid all the taxes against the property, approximating $23,492.25. Owens paid none of the taxes, did not offer to pay the taxes and did not object to their being paid. If this Court would relieve Owens of the obligations of the contract, which he seeks to enforce, it would in effect be awarding Owens punitive damages in an action of equitable cognizance. This it will not do. See Mid-Continent Petroleum Corp. v. Bettis, 180 Okl. 193, 69 P.2d 346. In connection with the payment of taxes see Boese v. Childress, 83 Okl. 60, 200 P. 997; and Heierding v. Dean, 181 Okl. 466, 74 P.2d 602.

There is no evidence whatsoever tending to show that El Gato or the Smiths paid any taxes in bad faith, nor does the fact that they contested Owens' action for specific performance necessarily constitute bad faith. They merely paid the taxes during the litigation to preserve the property.

We therefore hold that El Gato and the Smiths are entitled to credit for taxes paid by them, and interest thereon from the time of payment thereof.

■ It is next contended that the trial court erred in holding that Owens was entitled to rental on the property at a rate of $500.00 per month from October, 1941, to August 25, 1960, and interest thereon. It is urged that only the actual rentals as collected, with interest from the date each sum was collected, should be allowed; or, if Owens is entitled to a reasonable rental and not the actual rentals received, he is not entitled to interest thereon because the claim for rentals constitutes an "unliquidated claim."

In determining that Owens was entitled to $500.00 per month rentals, with the interest on each month's rentals when due, from October, 1941, to August 25, 1960, the trial court's judgment must have been based on the Barall Food Stores' lease contract which expired on December 31, 1939, and which provides for $500.00 per month rental; and the $500.00 per month lease contract executed by the Smiths in

1956; and the testimony of a Mr. Sears, who said the reasonable rental value during the period was $500.00 per month, when considered in conjunction with the building owned by the brother of Owens.

Mr. Sears, who testified in behalf of Owens, stated that "on the basis of having checked the rental value of this property prior to that date you have mentioned, 1942, and the further fact that I have some knowledge as to what it would rent for at this time, I would say it would be about $500.00 a month." This opinion evidence as to rental value was "when the lot was used in conjunction with the building" owned by the brother of Owens. The Smiths objected to the rental value testimony "when used in conjunction with the other building", which objection was overruled by the trial court.

In our former opinion we stated that the lease on the building and the lease on the lot were "interlocking" or "dependent" in that they referred to each other. However, the lease on the vacant lot which was "interlocking" or "dependent" with the lease on the building expired in December, 1939. We can not determine from the record and we did not hold in our former opinion, that the rental value of the lot should necessarily be considered in conjunction with the use and occupancy of the building during the period, or any part thereof, involved in the instant action. Therefore, when this cause is remanded for further proceedings for determining the reasonable rental of the lot in question, for the reasons hereinafter set forth, this determination will necessarily have to be made by the trier of the facts.

All the parties rely on Title 23 O.S.1961 § 62, as sustaining their position with reference to interest on the rentals. This statutory provision provides:

"The detriment caused by the wrongful occupation of real property, * * * is deemed to be the value of the use of the property for the time of such occupation, * * * and the

costs, if any, of recovering the possession."

We have construed the above statutory provision in several cases and in no instance has interest been allowed on the rentals. In Carter v. Barry, 154 Okl. 145, 7 P.2d 448, we held:

"In an action brought for possession of real property by one holding a valid agricultural lease thereon against one in wrongful occupation thereof, the measure of damages is the value of the use of the property, and not the actual rents received by the party in the wrongful possession."

See also Thrailkill v. Doyle, 134 Okl. 184, 272 P. 831; Sooner Pipe and Iron Co. v. Bartholomew, 207 Okl. 191, 248 P.2d 225; and other cases cited in the annotations.

We can see no distinction between an action brought for specific performance of a contract to purchase and for possession and an action brought for possession by the holder of an agricultural lease against a person in wrongful possession, in so far as rentals and interest thereon are concerned.

Owens relies however, on the case of Wilcox v. Westerheide, 199 Okl. 312, 185 P.2d 452, 173 A.L.R. 1171, which involved an action to cancel a void tax deed and for the rentals received to support the trial court's judgment that he is entitled to interest on the rentals. In that case the evidence as to the rental value was in conflict and we said the trial court's judgment determining the rental value was not against the clear weight of the evidence and we also said the allowance of interest on the rentals found due was also proper. It was urged by the defendants that the claim for rentals "was an unliquidated demand and that interest should begin to run only from the date of judgment." In answering this contention we said, "It would be inequitable to allow defendants interest on taxes paid and not require them to pay interest on rentals due while they occupied the property. *The rental value of lands is easily ascertained, and*

*the allowance* of interest thereon was proper." (emphasis supplied)

In the above case, the court cited no statutory provision or authority as a basis for its holding. An examination of the briefs filed in the case disclose that defendants were relying on a construction of Title 23 O.S.1961 § 6, which relates to interest when damages are certain, or capable of being made certain by calculation. It was defendants' contention that the claim for rentals was an unliquidated claim and interest could not be allowed. It follows that the court apparently found that the claim for rentals was not an unliquidated claim as it said *the rental value of lands is easily ascertained.*

The Wilcox v. Westerheide case, supra, was followed and cited as authority in Cherry v. Chambers, 205 Okl. 71, 235 P.2d 674. Although we affirmed the judgment of the trial court in the Cherry case which allowed interest on the rentals, an examination of the briefs filed and our opinion reveals that the question of interest was not an issue.

■ In Allison v. Allen, Okl., 326 P.2d 1059, we considered Title 23 O.S.1961 § 6, and we held:

"Interest cannot be recovered upon an unliquidated claim where a trial is necessary in order to ascertain the amount due."

In Lumbermen's Supply Co. v. Neal, 189 Okl. 544, 119 P.2d 1017, we held:

"Interest on an unliquidated claim, uncertain both as to existence and amount until established by an accounting, should be allowed only from the date of judgment." See also Dick v. Essary, 201 Okl. 196, 203 P.2d 715.

■ If this Court follows the reasoning in the Wilcox v. Westerheide case, in the instant cause, we would have to find that the rentals are capable of being made certain by calculation or the rental value of land involved is easily ascertainable. Based on the facts hereinafter set forth, it becomes readily apparent that such can

not be done in the instant action and that Owens' claim for the reasonable rental of the property constitutes an unliquidated claim.

The record discloses that during the period of time between October, 1941, and January 17, 1946, El Gato was in possession of the vacant lot but the same was not under lease and no income was derived from it. During this time, the natural resources and our economy were closely related to world conflicts. Less than two months after El Gato went into possession of the property, this country was involved in a world war. This property was used as a parking lot and as one witness testified, "parking lots were a dime a dozen during this period." After the war, the need for additional parking space was not instantaneous. There is no evidence that El Gato could have leased the property or derived a financial benefit from its use and occupation during this period of time.

The record also discloses that Owens, or his tenant, Barall Food Stores, was in possession of the property from June, 1938, to the date the notice of termination was served on him in October, 1941. Owens testified and admitted that while he did not rent the property after the Barall Food Stores' lease expired in December, 1939, he had many opportunities to do so. On cross examination he admitted that he had at least two chances each month during the two year period to lease the property under long term leases but he refused to do so because he did not want to encumber the property for a long period. The evidence further shows that the original purchase contract between El Gato and Owens was amended at the request of Owens because Owens was in litigation with the taxing authorities and did not want anything of record showing title in him or showing that he had executed a lease on the property because the tax lien would become a lien against the property. During the years between 1942 and 1947, Owens said he was out of the City of Tulsa most of the time, that he exercised no supervision over

the property but "kept watch on it". Owens did not state that he could have rented the property during these years. In other words, Owens admits that he would not have rented the property prior to the final termination of the tax litigation he was involved in and offered no evidence that he could have rented the property after that time, but claims that he is entitled to the $500.00 per month rental, with interest thereon between October, 1941, and January, 1946, when the Smiths took possession of the property.

The Smiths took possession of the property in January, 1946, and the record discloses they rented the property for two years beginning April 1, 1946, at $50.00 per month; for two and one half years from April 1, 1948, at $75.00 per month; for 14 months beginning October 1, 1950, at $150.00 per month; for five years from January 1, 1951, at $200.00 per month; and for the remaining period the property was under a ten year lease at $500.00 per month.

There is no evidence that Smiths purchased or rented the property in bad faith; that they could have rented the vacant lot for any sum greater than the rental they received or that any rental agreements they made were not at arms length.

By Owens' admission that he would not have rented or leased the property until the tax litigation in which he was involved finally terminated for the reasons heretofore stated, he admits that he would not have received any rentals or income during this specific period. However, he contends he is entitled to a reasonable rental for said period. We can only conclude that Owens is estopped, by his own admission, from claiming any rentals between October, 1941, and the final termination of the tax litigation.

While is its true that El Gato did not plead estoppel, it was unnecessary. We have repeatedly held that equity having once attached in a proper proceeding, will administer complete relief on all issues properly raised by the evidence, regardless of whether they are specifically raised by the pleadings. See Snakard v. McLaughlin, Okl., 351 P.2d 1013.

We can not sustain El Gato's and the Smiths' contention that Owens is entitled to only the actual rental received and interest thereon. See Carter v. Barry, supra. However, the actual rentals received is proper evidence to be considered by the trier of the facts in determining the reasonable value of the use and occupation of the property. See Richardson v. Penny, 10 Okl. 32, 61 P. 584; and Endicott v. Fisher, 93 Okl. 31, 219 P. 378. Not only are the actual rentals received competent evidence as to the rental value of the property, but the economic conditions existing should have been considered with other competent evidence.

We therefore hold that Owens is entitled to a reasonable rental on the property for a period beginning on the date that the tax litigation he was involved in finally terminated; and we further hold that the trial court erred in allowing interest on the rental, as Owens' claim for rentals constitutes an unliquidated claim.

In the case of equitable cognizance, where the judgment of the trial court is clearly against the weight of the evidence or contrary to the law applicable thereto, this Court will reverse such judgment or decree, or render or cause to be rendered such judgment and decree as the trial court should have rendered. See Federal National Mortgage Association v. Walter, Okl., 363 P.2d 293.

We have carefully weighed the evidence and find that the trial court's findings and judgment that the reasonable rental of the property between October, 1941, and August 25, 1960, was $500.00 per month, is clearly against the weight of the evidence. However, from the evidence submitted, this Court is unable to adjust the equities of the parties and render the kind of judgment that should be rendered. Therefore, that portion of the trial court's judgment relating to the rental value of the property is reversed.

It necessarily follows that on rehearing of this cause, the trial court should first determine the date of final termination of the tax litigation that Owens was involved in; it should then determine if evidence relating to the value of the use and occupation of the property, or the rental of the property, should be considered in conjunction with the building owned by the brother of Owens and if so, the period of time; or whether the value should be based solely on the vacant lot standing alone. The trial court then should determine the rental and should give credit to Owens for the reasonable rental from the date of final termination of the tax litigation to date of judgment, and interest from date of judgment.

■ The Smiths contend the trial court erred in (1) denying their motion for leave to amend their answer to Owens' cross petition; (2) denying their request for additional findings of fact and substitutional conclusions of law; and (3) denying their motion to withdraw the stipulations of their attorney with respect to what issues were to be determined after the cause was remanded to the trial court for further proceedings.

The proposed amendment above referred to contained allegations relating to why Owens was not entitled to specific performance of the contract and the same was filed approximately one year after the evidence in the new trial had been submitted and approximately three months after the trial court had entered its findings of fact and conclusions of law.

■ In Fisher v. Kansas City, M. & O. Ry. Co., 169 Okl. 282, 36 P.2d 744, we held that allowing or refusing to allow plaintiff to amend his petition after the evidence is closed rests generally in the discretion of the trial court. We conclude that the trial court did not abuse its discretion in refusing to permit the Smiths to amend their answer to Owens' cross petition.

■ The Smiths' request for additional findings and conclusions of law was filed the same date that his motion to amend the

cross petition was filed. The requested findings related to either the same matters contained in the motion to amend or to matters properly before this Court in other contentions. We therefore conclude the trial court did not abuse its discretion in denying the Smiths' request for additional findings and conclusions of law.

■ In considering Smiths' contention that the trial court erred in denying their motion to withdraw from the stipulation of the attorneys, which was filed on the same date the other two above motions were filed, we find that where stipulations have been entered into and filed, one of the parties will not be allowed to withdraw from the agreement then made without the consent of the other, except by leave of the court upon cause shown. See Coon v. Jones, Okl., 303 P.2d 425.

As heretofore stated, the parties agreed and stipulated as to the limits of the trial on rehearing; it was limited to this stipulation on trial of the cause and no motions were filed to withdraw the stipulation. We conclude there was no error in denying the Smiths' application to withdraw the stipulation of their attorneys.

■ The Smiths contend the trial court erred in not holding that Mrs. Parrish and the Watsons, individually, were jointly liable with the Smiths, instead of holding that they were liable as successor trustees only of El Gato.

The record discloses that after El Gato instituted this action in 1941, El Gato was dissolved by a decree of the District Court of Tulsa County on September 9, 1942. At the time of dissolution, Mrs. Parrish and Mr. and Mrs. Watson were directors and constituted the entire Board of Directors of El Gato and owned all the stock. The property was later transferred to Mrs. Parrish and the Watsons. Neither the deeds nor the proceedings dissolving El Gato are a part of the record. On February 6, 1948, an amended petition was filed, by leave of court, setting forth the above facts and the cause thereafter proceeded in the

names of the Board of Directors as Successor Trustees of the dissolved corporation.

Title 18 O.S. 1961, § 1.189 provides:

"The board of directors * * * voluntary or involuntary winding up and dissolution of a domestic corporation, shall continue to act as a board and shall have full power to wind up and settle its affairs. * * *"

Throughout the findings of fact and conclusions of law, and in the journal entry of judgment, the trial court refers to El Gato, and its successor trustees. The Watsons and Mrs. Parrish were acting as the successor trustees in conveying the property to the Smiths and in litigating the present cause of action. They remained successor trustees during the pendency of this action. Although they were made defendants, individually, pursuant to the motion of Owens, the trial court correctly found and determined they were acting for and on behalf of El Gato, as its successor trustees, and not in an individual capacity. We therefore hold that Mrs. Parrish and the Watsons were not jointly liable, as individuals.

We further hold that since the Smiths were the purchasers and assignees of all the right, title and interest of El Gato, Mrs. Parrish and the Watsons, the Smiths are entitled to any and all sums, if any, that Owens shall be obligated to pay.

The judgment of the trial court is reversed and remanded for further proceedings not inconsistent with the views herein expressed. If on new trial it is determined that the total liability of Owens for the purchase price and interest thereon to date of any judgment to be rendered and for the taxes paid by El Gato and the Smiths, with interest thereon to such time, exceeds the credits due Owens for rentals as herein set forth, all of said sums shall be paid to Mr. and Mrs. Smith.

Reversed and remanded.

BLACKBIRD, C. J., HALLEY, V. C. J., and WILLIAMS, JACKSON, BERRY and IRWIN, JJ., concur.