437 F.2d 838
 AETNA CASUALTY AND SURETY COMPANY, Employers Liability
Assurance Corporation, Kansas City Fire and Marine
Insurance Company, Stuyvesant Insurance
Company, and Ohio Casualty
Company, Appellants,
v.
BRUNSWICK CORPORATION, Delta Enterprises, Inc., and Holiday
Recreation Center, Inc., Appellees.
 No. 698-69.
 United States Court of Appeals, Tenth Circuit.
 Jan. 22, 1971.
 
 1
 Walter D. Hanson of Hanson, Fisher, Tumility, Peterson & Tompkins, Oklahoma City, Okla., for appellants.
 
 
 2
 F. Paul Thieman, Jr., Tulsa, Okla., for appellee Brunswick Corp.
 
 
 3
 Before BREITENSTEIN, Senior Circuit Judge, SETH, Circuit Judge, and TEMPLAR, District Judge.
 
 
 4
 TEMPLAR, District Judge.
 
 
 5
 This case was instituted by the filing of six separate actions, one by Delta Enterprises, Inc., (Delta), and five by appellee, Brunswick Corporation (Brunswick), against the five insurance companies designated as appellants herein. Appellee Brunswick later filed amended complaints adding appellee, Holiday Recreation Center, Inc., (Holiday), as a defendant. The suits were brought to recover under policies of insurance issued by the appellant insurance companies for loss of personal property sustained by Delta and Brunswick as a result of a fire on July 27, 1965, at McAlester, in the Eastern District of Oklahoma.
 
 
 6
 Summarizing the pertinent facts out of which this litigation developed, it appears that Brunswick sold some bowling alley equipment and supplies to Holiday Recreation Center, Inc., on a conditional sales contract. Holiday installed the equipment and commenced the operation of a bowling alley business. When the equipment was purchased, Holiday agreed to effect insurance on the personal property sold to it by Brunswick and the insurance contracts were to be endorsed with a loss payable clause to Brunswick. This, Holiday undertook to do and under such insurance contracts, appellants insured the interest of Holiday and of Brunswick in the bowling alley equipment. For some reason, not clear, only two of the five insurance contracts contained the loss payable endorsement to Brunswick but no issue has been raised because of this omission. Thereafter, Holiday transferred its bowling alley business to Delta. Delta took possession of the business and the equipment and continued its operation until the date of the fire on July 27, 1965.
 
 
 7
 The fire destroyed the personal property on which Holiday had obtained insurance covering property it then owned, and on property it was purchasing from Brunswick.
 
 
 8
 When Holiday transferred its business to Delta on June 14, 1965, certain described property owned by Holiday was sold to Delta, but by the terms of the transfer agreement, the property acquired under the conditional sales contract between Holiday and Brunswick was specifically excluded from the transfer. Possession only of the equipment on which Brunswick held a lien was transferred to Delta by Holiday. Under the sales agreement between Holiday and Delta, the former agreed to hold the latter harmless from any liability which might be incurred as a result of the use of the Brunswick equipment by Delta.[1] Endorsements were obtained on the insurance contracts effective June 14, 1965, which provided that the named insured would be Delta instead of Holiday. Appellant insurance companies denied liability to Brunswick on the grounds that the interest of Brunswick was not insured at the time of the loss, except as derivative through Holiday and that Holiday had sold and assigned all of its interest in the personal property contained in the bowling alley to Delta, specifically excepting all merchandise purchased from Brunswick, the title to which remained in Holiday. It was also alleged by appellants that Holiday had, prior to the loss, assigned to Delta all of its right, title and interest in and to the various insurance policies written by appellants with the knowledge and without any objection by Brunswick.
 
 
 9
 Holiday, after being made a party defendant, filed in the Brunswick cases its answer and cross-complaint against the appellant insurance companies, alleging the validity of the policies with respect to all the property and asking for any money in excess of what it owed Brunswick that might be recovered under the policies. In regard to Holiday's cross-complaint, the appellants filed a special appearance motion and a motion to dismiss urging that Holiday's cross-complaint was barred by the one-year statute of limitations. Both of these motions were denied by the trial court.
 
 
 10
 The cases were consolidated by the trial court for pretrial and trial purposes. Subsequently, Brunswick, Holiday and Delta all filed motions for summary judgment against the appellant insurance companies. In its motion for summary judgment, appellee Brunswick relied on two theories for recovery: One theory was that the endorsements changing the named insured from Holiday to Delta were invalid under Oklahoma law; and the other theory was that Delta held the property as a bailee of the insured property and the insurance was therefore valid and enforceable. At the pretrial hearing, Brunswick was required by the trial court to elect upon which theory it was going to rely, and appellee Brunswick elected to rely on the bailment theory. At the conclusion of the hearing, the trial judge indicated his intention to render a summary judgment as to liability holding Delta to be a bailee of the property on which Brunswick held a lien, and that the insurance companies were liable to Brunswick to the extent of its interest. The cases then proceeded to trial on the issue of value of the property insured. The jury returned a verdict in Delta's favor in the amount of $45,923.72 for its property, and a verdict in Brunswick's favor in the amount of $145,035.52. Thereafter, the trial judge entered judgment which included the order sustaining the motions for summary judgment and judgments against the appellant insurance companies in favor of Delta and Brunswick in accordance with the jury verdicts, plus the allowance of pre-judgment interest at six percent and interest from the date of the judgment at the rate of ten percent per annum until paid.
 
 
 11
 Appellant insurance companies have satisfied the judgment in favor of Delta, and Delta is no longer a party to this appeal. Holiday has neither filed an appeal nor a brief countering the question raised by appellants regarding the trial court's decision that since actions brought by Brunswick were within time, under Oklahoma law, such actions were for the benefit of all interested parties.
 
 
 12
 The essential contentions of the appellants here are: That the trial court erred in rendering summary judgment on the issue of liability; that the court erred in ruling that the property of Brunswick had been bailed to Delta; that the provisions of the insurance contract extending coverage to the property of others 'provided the Insured is legally liable therefor, personal property (except as otherwise excluded) while held in trust, on commission or consignment, for alteration or repair' could not be extended to property covered by a contract wherein Delta was expressly relieved of liability for such property; that the court erred in allowing pre-judgment interest; and that the cross-action of Holiday against the insurance companies was barred by the statute of limitations.
 
 
 13
 The main issue presented to this Court is whether or not the trial judge committed reversible error in sustaining appellee Brunswick's motion for summary judgment and holding, in effect, that as a matter of law the appellant insurance companies were each respectively and proportionately liable to Brunswick on their various policies of fire insurance.
 
 
 14
 This Court will focus its attention first on the crucial bailment issue which appears to be the basis of the trial court's decision.
 
 
 15
 This Court cannot conclude, under the facts and circumstances of this case, that the trial court erred in holding as a matter of law Delta was a bailee of the Brunswick property. Under the applicable Oklahoma law, 15 O.S.A. 442,[2] when Delta took possession and use of the Brunswick property, it became a voluntary bailee of that property. The transaction between Holiday and Delta met the statutory definition of a voluntary bailment. The statute does not make as a requirement to a bailment situation that the bailment be created by the owner of the property. Holiday had a sufficient interest in the property to create a bailment relationship with Delta. Furthermore, Delta was aware that certain of the property transferred to it by Holiday belonged to Brunswick, and even undertook to negotiate with Brunswick for the purchase of such equipment. From the time of the Delta-Holiday transaction to the time of the fire, Delta had the full use, possession and benefit of the Brunswick equipment.
 
 
 16
 Possession of the Brunswick equipment was given to Delta and Delta consented to the bailment by accepting possession and using the equipment. Delta was not misled by anything said or done by any of the parties.
 
 
 17
 In reference to delivery of the property, neither Brunswick nor Holiday was required to withdraw the Brunswick equipment from the bowling alley and personally hand it to Delta. Pursuant to the contract between Holiday and Delta, Delta was given the custody and use of the Brunswick equipment. At the time of the fire, Delta had sole custody and control of the equipment. As the court stated in Essex v. Fife, 67 Okl. 55, 168 P. 814, 815: '* * * The object of bailment may be as varied as the transactions of man, and is made for the purpose of safe-keeping, ordinary use, and for sale.'It is beyond question that a bailee in possession of personal property has an insurable interest in the property.[3] Oklahoma has a statute[4] which defines insurable interest, and pursuant to that statute Delta had an insurable interest in the Brunswick equipment. It could hardly be contended that Delta was not deriving any substantial economic interest from the use of the property since it was using and operating the Brunswick equipment for economic gain prior to the fire.
 
 
 18
 When the endorsements were made to the insurance policies, changing the name insured from Holiday to Delta, the interest of appellee Brunswick was not altered or changed. The Brunswick equipment continued to be insured under the policies with the new endorsements, and Brunswick was still named under two of the policies' loss payable clauses. This Court feels that the reason Brunswick was not named under the loss payable clauses in the other three policies was an oversight, and that the intention of all parties was that Brunswick should have been named under these clauses. But, in essence, this makes no difference in the case because Brunswick's interests were at all times covered under the policy provisions.
 
 
 19
 Under applicable Oklahoma law, Delta was responsible to Brunswick and Holiday for the return of Brunswick's equipment.[5] Although, pursuant to the contract between Delta and Holiday, Delta may have been indemnified against liability for use of the Brunswick equipment by Holiday, Brunswick was not a party to his contract and was not bound by its terms. Insofar as Delta is concerned in its relationship to Brunswick, Delta stood essentially in the same shoes as Holiday.
 
 
 20
 Delta had a sufficient insurable interest in Brunswick's equipment and voluntarily undertook to continue to insure that interest irrespective of the hold harmless agreement between it and Holiday. The appellant insurance companies cannot now attempt to repudiate their policies insofar as Brunswick is concerned because of the hold harmless agreement between Holiday and Delta. The insurance policies as written insured the interests of Delta and Brunswick, and, boiled down in a nutshell, when a fire occurred destroying the property, the appellants became obligated to pay for the loss irrespective of any legal liability Delta had to Brunswick.
 
 
 21
 As to appellants' claim that the trial court erred in allowing pre-judgment interest, this Court concludes that the contention is without merit. The applicable Oklahoma statutes[6] provide for the granting of pre-judgment interest in cases such as the present one. It is true that interest cannot be recovered upon an unliquidated claim where a trial is necessary in order to ascertain the amount due.[7] But under Oklahoma statutory and decisional law, the trial judge correctly granted pre-judgment interest from a time sixty days after proof of loss until the entry of judgment. In fidelity-Phenix Fire Ins. Co. v. Board of Education, 201 Okl. 250, 204 P.2d 982, Syl. 4, the Oklahoma court held:
 
 
 22
 'Under Tit. 23 O.S.1941 22, interest on the principal amount due on an insurance policy is recoverable from the time the policy becomes due and payable under its terms.'[8]
 
 
 23
 As to the appellants' contention that the trial court erred in rendering summary judgment on the question of liability, this Court concludes that the present case was an appropriate case for summary judgment and the trial court correctly granted it. Although the appellants have cited numerous cases and their holdings considering the question of summary judgment, the rule followed by this Court in regard to motions for summary judgment is clear.[9] Suffice it to say that the parties in litigation are entitled to their day in court; and the relief contemplated by Rule 56 is drastic, and should be applied with caution to the end that the litigants will have a trial on bona fide factual disputes, but when it has been shown that there is no genuine issue as to any material fact then the entry of summary judgment is appropriate.[10]
 
 
 24
 Since it is apparent to this Court that there was no issue of material fact remaining before the trial court which could change the outcome of the case, the granting of appellee Brunswick's motion for summary judgment was appropriate.
 
 
 25
 The trial court's decision is supported by the record and authorities, and this Court cannot conclude that the trial court's decision is clearly erroneous. This is a case involving the interpretation of the applicable law of the State of Oklahoma, and this Court continues to adhere to the rule that it will accept a federal trial judge's interpretation of state law unless convinced that such interpretation is clearly erroneous.[11]
 
 
 26
 In view of the determination of these issues, it is not necessary to discuss the other points raised by the appellants.
 
 
 27
 The judgment of the trial court is therefore affirmed.
 
 
 
 [1]
 The pertinent provisions of the sales agreement read:
 Holiday agrees to give a bill of sale on all of the herein above described personal property, subject to the assumption of the balance due thereon, and all other equipment located in the building occupied by Holiday Bowl and used in the present operation of Holiday, (specifically excluding, however, the equipment supplied by Brunswick Corporation). Delta is to be permitted to use the bowling lanes of Holiday, supplied by Brunswick Corporation, until same are disposed of, without cost. Holiday agrees to hold Delta harmless from any liability which may be incurred as a result of such use.
 
 
 [2]
 15 O.S.A. 442: 'A voluntary bailment is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or a third party; the person giving is called the bailor and the person receiving the bailee.'
 
 
 [3]
 8 Am.Jur.2d, Bailments, 125, p. 1019; 4 Appleman-Insurance Law and Practice, 2211, p. 128
 
 
 [4]
 36 O.S.A. 3605: 'B. 'Insurable interest' as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.'
 
 
 [5]
 15 O.S.A. 447: 'A bailee must deliver the thing to the person for whose benefit it was deposited, on demand, whether the bailment was made for a specified time or not, unless he has a lien upon the thing deposited, or has been forbidden or prevented from doing so by the real owner thereof, or by the act of the law, and has given the notice required by Section 1093.' 15 O.S.A. 456: 'A bailee is liable for any damage happening to the thing bailed during his wrongful use thereof, unless such damage must inevitably have happened, though the property had not been thus used.'
 
 
 [6]
 23 O.S.A. 6: 'Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.'
 
 
 [23]
 O.S.A. 22: 'The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon.'
 
 
 [7]
 Smith v. Owens (Okl.), 397 P.2d 673; Schaff v. Hudgins, 96 Okl. 173, 221 P. 90
 
 
 [8]
 See also Phoenix Ins. Co., Hartford, Conn. v. Diffie (Okl.), 270 P.2d 634; First National Insurance Co. v. Norton, 238 F.2d 949 (10th Cir.)
 
 
 [9]
 Bushman Construction Company v. Conner, 307 F.2d 888 (10th Cir.); Machinery Center, Inc. and the Continental Bank and Trust Company v. Anchor National Life Insurance Company, 434 F.2d 1, filed November 24, 1970 (10th Cir.)
 
 
 [10]
 Fed.Rules Civ.Proc., Rule 56(c), 28 U.S.C.A
 
 
 [11]
 Persons v. Amerada Hess Corporation, 422 F.2d 610 (10th Cir.); Bartch v. United States, 330 F.2d 466 (10th Cir.)