## ALFREY v. RICHARDSON.

No. 34106.   May 8, 1951.

*231 P. 2d 363.*

Logan Stephenson, F. C. Swindell, O. C. Lassiter, Earl Truesdell, and A. D. Mason, Tulsa, for plaintiff in error.

M. C. Spradling, Tulsa, for defendant in error.

JOHNSON, J. This is an action brought by Lucy Lee Richardson, plaintiff, against Betty S. Alfrey, defendant, to quiet title in and to lot 10, block 1, Acme Farm Addition to the city of Tulsa, Oklahoma.

Plaintiff, in her petition, in substance, alleges and the evidence offered in her behalf tends to establish: On the 15th day of July, 1927, she and her then husband, George G. Richardson, entered into a written contract with Ella S. Kimball for the purchase of the lot.

Subsequent thereto and prior to the bringing of this action, plaintiff and her husband were divorced and her husband executed to her an assignment in and to his interest in the contract. Plaintiff, prior to entering into the contract, was in possession of the premises as a tenant of Ella S. Kimball, and after acquiring the contract she remained in the continuous possession thereof claiming under the contract and was in possession at the time the action was brought.

Plaintiff is the daughter of defendant and Ella S. Kimball is a sister of the defendant.

Plaintiff, under the contract, was to pay $1,250 as the purchase price of the premises; $100 was required to be paid upon the date of the execution thereof and the balance at the rate of $50 per month payable on the same date each and every month thereafter, the deferred payments to draw 8 per cent interest from date until paid. The contract further provided that plaintiff should promptly pay all taxes, charges and assessments against the premises and should keep the same insured for $500. Time is made the essence of the contract. It provides that upon the failure of the party of the second part (plaintiff herein) to pay the deferred payments promptly when due, the contract at the option of the party of the first part may be instantly terminated and all payments made by party of the second part shall be forfeited as liquidated damages and expense of retaking the property and all such payments shall be retained by party of the first part as rental and damages, and the party of the first part shall have the right to re-enter and take possession of the premises without legal proceeding. Plaintiff from the date of signing the contract made irregular payments thereon and continued to do so until May 4, 1931, at which time payments were discontinued. At that time there was $435.46 remaining due on the principal with 8 per cent interest thereon from that date until paid. On September 12, 1932, plaintiff received a letter from the attorney for Ella S. Kimball wherein she was notified that she had been in default under the contract since May 4, 1931, but that Mrs. Kimball did not de-

sire to file suit to vacate and set aside the contract but that plaintiff should make arrangements to refinance the property and make the balance of the payments due under the contract and in the event this could be done Mrs. Kimball would execute and deliver her a deed. If this was not done within two weeks after receipt of the letter suit would be filed to cancel the contract and recover possession of the property. Defendant was then and is now a resident of the State of Kentucky, but was at that time at the home of plaintiff visiting with her. Plaintiff after having received this letter showed it to defendant and stated that she was about to be removed from the property. Defendant then without the knowledge of plaintiff called on her sister, Mrs. Kimball, attempting to adjust the matter but no adjustment could be made without full payment of the balance due. The amount necessary, including principal and interest, was then calculated by Mrs. Kimball and defendant was advised of the amount necessary to discharge the indebtedness in full. Mrs. Kimball was at that time indebted to defendant in approximately the same amount. It was then agreed by Mrs. Kimball and defendant that Mrs. Kimball would deed the premises to defendant and defendant would cancel Mrs. Kimball's debt to her as consideration for the execution of the deed. This arrangement was carried out and Mrs. Kimball executed a warranty deed to defendant in and to the premises. Defendant then notified plaintiff that she had adjusted the matter with Mrs. Kimball; that she had a deed thereto and that plaintiff need no longer worry about making the payments or over being ejected from the premises. Mrs. Kimball accepted all payments theretofore made by plaintfif on the contract without any objection that they were not timely made and she at no time had attempted to exercise her option to terminate the contract and retake and re-enter the premises; nor did defendant after she acquired the deed from Mrs. Kimball attempt so to do.

On the 5th day of May, 1939, plaintiff offered to pay defendant the balance due on the property under the contract including the principal and interest to date. She then had money sufficient to make the offer good, but did not have the money with her and did not tender her in cash the exact amount necessary to discharge the balance due on the premises under the contract including principal and interest, but could have produced the money if the offer had been accepted.

Defendant refused to accept the money stating that she did not need and did not then want the money. Several times thereafter plaintiff offered to pay her the balance due under the contract and each time defendant refused to accept the offer on the same ground. In September, 1946, plaintiff's son, Bill Richardson, who then had sufficient money with him to pay the balance due under the contract, offered to pay defendant in full the amount then due and demanded a deed. He did not, however, show her the money. Defendant refused to accept the money stating to Mr. Richardson that since he had recently married he would need the money worse than she needed it.

Plaintiff also offered evidence tending to establish that at the time defendant obtained the deed from Mrs. Kimball she also obtained from her an assignment of the contract in question. Plaintiff made valuable improvements on the lot and paid all taxes. In her petition she tenders payment of the balance due on the contract, principal and interest.

Defendant bases her defense on the theory that at the time she obtained her deed from Mrs. Kimball plaintiff had forfeited all her rights under the contract and that the deed taken by her conveyed to her a full and fee-simple title to the land and in the alternative pleads that in the event the court should hold the deed did not convey a full fee-simple title to the land and plaintiff had not then forfeited her

rights under the contract and the deed was taken subject to the contract, she then is entitled to recover from the plaintiff the amount remaining due under the contract at 8 per cent interest from May 4, 1931, and the court should decree a lien against the premises in the amount found due, and in the event plaintiff fails to pay the same the court should enter a decree foreclosing the lien and ordering the property sold to satisfy such lien.

Defendant in support of her defense testified she took a deed from Mrs. Kimball in and to the premises and that the consideration paid for the same was as testified to by plaintiff. She denied plaintiff or her son ever offered to pay her the balance due on the premises. She, however, does not claim to ever have attempted to exercise the option contained in the contract to terminate it or that she at any time demanded possession of the premises. She also denied that she had obtained an assignment of the contract.

The trial court, in substance, found: Plaintiff purchased the property from Ella S. Kimball as heretofore stated; defendant thereafter obtained a deed to the property from Ella S. Kimball; neither Mrs. Kimball nor defendant ever attempted to exercise the option provided in the contract to terminate the same; defendant's deed conveyed to her no greater right than Ella S. Kimball had in and to the premises and she took the deed subject to all the rights and equity plaintiff had in and to the lot under the contract; on or about May 5, 1939, plaintiff tendered to defendant the sum of $435.56, the balance due on said lot plus interest in the total sum of $714.40, which defendant refused to accept; plaintiff was thereupon entitled to a deed from the defendant to the premises; plaintiff by virtue of the tender and refusal of defendant to accept the same cannot recover interest on the principal subsequent to the date of such tender. The court rendered judgment in favor of defendant on her cross-petition for the sum of $714.40 and decreed a vendor's lien on the premises in that amount, and ordered such sum be forthwith deposited by plaintiff in the office of the court clerk and upon the making of such deposit title in and to the lot be quieted in her and defendant be required to execute a deed to her for said lot and upon failure so to do her deed to the lot be canceled and expunged from the record; and in the event plaintiff fails to make the deposit ordered the lien be foreclosed and the lot sold to satisfy the lien.

Defendant appealed from the judgment and relies for reversal on the following propositions:

(1) Plaintiff at and prior to the time defendant obtained her deed from Mrs. Kimball had forfeited her rights under the contract and defendant took a fee-simple title in and to the lot in question.

(2) Plaintiff has abandoned the contract.

(3) The finding of the trial court that plaintiff on May 5, 1939, made a tender to defendant of the amount due, principal and interest, in the sum of $714.40, is not supported by the evidence and the court erred in holding that defendant could not recover interest on the balance due subsequent to that date.

(4) Plaintiff's action is one for specific performance of the contract and was not brought within the five year limitation period prescribed by 12 O.S. 1941 §95, subd. 1, and is therefore barred by limitation.

We do not agree with the contention of defendant that prior to and at the time she took her deed from Mrs. Kimball plaintiff had forfeited her rights under the contract. The evidence as above detailed, which is undisputed, shows that from the time of the execution of the contract the payments made by plaintiff were irregular. None of the payments were made strictly in accordance with the terms of the contract.

The evidence shows that payments were made up to and including May 4, 1931, and that not a single payment had ever been made in accordance with the strict terms of the contract. All of these payments were made after due. Mrs. Kimball received these payments without objection and without ever having made any attempt to exercise her option to terminate the contract or to re-enter and take possession of the premises as thereby provided. She thereby waived the forfeiture provision of the contract and could not therefore exercise the option without first demanding payment and giving plaintiff a reasonable time in which to perform. In the case of Palovik v. Absher, 198 Okla. 671, 181 P. 2d 989, we said:

"Where real estate is sold under a contract providing that a deed is to be delivered when all installments of the purchase price are paid; that time is of the essence of the contract, and that upon default in payment of installments all payments made shall be forfeited as liquidated damages, and vendee takes possession thereunder but fails to make payments as required by the contract, vendor by accepting the payments made, without protest or objection, waives his right to strict compliance with the terms of the contract, and may thereafter terminate it because of the default of vendee only after the giving of notice and a reasonable time to remedy the default."

See, also, Ruhland v. Bohner, 149 Okla. 36, 299 P. 167.

The evidence is also conclusive that after having obtained the deed defendant at no time attempted to exercise the option contained in the contract or ever attempted to retake and enter into possession of the premises. Defendant, however, insists that the letter written by the attorney for Mrs. Kimball on September 12, 1932, establishes that Mrs. Kimball had prior to the time the deed was executed exercised her option to terminate the contract. We do not agree. The letter expressly recognizes the existence of the contract and demands that it be performed and a rea-

sonable time is given in which to perform. Defendant made a settlement with Mrs. Kimball and Mrs. Kimball accepted the money under the terms of the contract. The letter instead of being evidence tending to prove Mrs. Kimball, prior to the time she took the deed, had terminated the contract, proves the contrary. Defendant took her deed with knowledge of the existence of plaintiff's contract, she was not an innocent purchaser. She therefore took the deed subject to all rights of plaintiff under the contract.

The evidence above detailed also conclusively shows that plaintiff at no time had abandoned the contract but that she was at all times insisting upon her rights thereunder.

As to the contention that the court erred in finding a tender of the balance due on the contract was made by plaintiff to defendant, we agree that such finding is not altogether accurate. No formal tender was made. However, the tender was not refused on this ground, but was refused on other grounds. Moreover, under the pleadings in this case, it is shown that defendant was claiming a fee-simple title in and to the land, was claiming adversely to plaintiff and contending that plaintiff had forfeited all her rights under the contract. It is therefore clear that if a strict legal tender had been made, defendant would not have accepted the money. Tender was therefore waived and the result is the same as though a strict legal tender had been made and the conclusion reached by the court that defendant on her cross-petition is only entitled to recover interest up to the 5th day of May, 1939, the date on which the offer was made, is nevertheless correct. Defendant was in no manner prejudiced because of the inaccuracy in this finding. We have so held in Oklahoma Farm Mortgage Co. v. Cesar, 178 Okla. 451, 62 P. 2d 1269. In that case it appears that plaintiff sought to recover on a promissory note and foreclose on a mortgage given to secure the same.

The defense was that on a certain date a tender had been made which was refused and plaintiff could not therefore recover interest on the amount due subsequent to that date. Defendant in that case testified, as did the plaintfif in this case, that he offered to pay to the plaintiff the amount then due, principal and interest, and that he had the money and was in a position to make the offer good. He did not, however, have the cash with him and did not then and there tender the cash but was in a position to promptly make the offer good. The facts in that case were undisputed. The trial court instructed the jury that the plaintiff had made a legal tender on a certain date and plaintiff could not recover interest on the note and mortgage subsequent to that date. An exception was taken to this instruction. The offer was not refused on the ground that no formal tender of cash had been made but was refused on other grounds. The trial court held that while the evidence failed to show a strict legal tender it was clear under the evidence that had such tender been made it would not have been accepted, that a tender was therefore waived and the result was the same as though a legal tender had been made, and held the trial court did not commit reversible error in giving the instruction. The same conclusion under a similar state of facts was reached in Grier v. McCormick, 100 Okla. 36, 227 P. 400.

Neither can the contention of defendant be sustained that plaintiff's cause of action is one for specific performance and is barred by the five-year period of limitation prescribed by the statute above referred to.

Plaintiff's action is one to quiet title. Defendant under her deed was claiming a full fee-simple title and adversely to the interest and title claimed by plaintiff under her contract.

The general rule is that a contract for the sale of land, bona fide, made for a valuable consideration, vests an equitable interest in the vendee from the time of the execution of the contract. Scott-Baldwin Co. v. McAdams, 43 Okla. 161, 141 P. 770; Adams v. White, 40 Okla. 535, 139 P. 514. And in the later case of Whale v. Pearson, 201 Okla. 619, 208 P. 2d 552, at page 623, we said:

". . . It is well settled in this state that a contract for the sale of land, bona fide, made for a valuable consideration vests the equitable interest in the vendee from the time of the execution of the contract. . . ."

An equitable interest or title is sufficient title upon which to predicate an action to quiet title. Keith v. Lawson, 195 Okla. 157, 155 P. 2d 716; Smith v. Reneau, 188 Okla. 629, 112 P. 2d 160.

Since we hold that plaintiff's action was one to quiet title rather than an action for specific performance, the action is not controlled by the five-year period of limitation relied upon by defendant. The evidence shows that immediately after the execution of the contract, plaintiff went into possession of the land and remained in continuous possession thereof claiming an equitable interest or title therein. She therefore had a right to maintain an action to quiet her title against the adverse claim of defendant, and so long as she remained in the possession thereof, no statute of limitation ran against that right. Whitehead v. Bunch, 134 Okla. 63, 272 P. 878; Warner v. Mason, 109 Okla. 13, 234 P. 747.

Under the evidence in this case the trial court reached the correct conclusion and entered a proper judgment. It cannot be said that the judgment rendered is clearly against the weight of the evidence. It will therefore not be disturbed on appeal.

Affirmed.

LUTTRELL, V. C. J., and WELCH, GIBSON, DAVISON, CORN, and O'NEAL, JJ., concur.