David MANLEY, Plaintiff, Appellant,

v.

Dexter FONG, Defendant, Appellee.

No. 81–2466.

United States Court of Appeals,
Tenth Circuit.

May 18, 1984.

Rehearing Denied July 6, 1984.

**1416**

David S. Eldridge of Oklahoma City, Okl., for plaintiff-appellant.

George W. Dahnke, of Hastie & Kirschner, Oklahoma City, Okl., for defendant-appellee.

Before DOYLE and LOGAN, Circuit Judges, and CHILSON *, District Judge.

CHILSON, District Judge.

Plaintiff, Manley, a resident of Oklahoma, and defendant, Fong, a resident of Vancouver, Canada, entered into a written agreement in Vancouver whereby plaintiff agreed to sell to Fong and Fong agreed to purchase from plaintiff for a specified sum, an interest in an oil and gas lease on land located in Oklahoma.

The defendant failed to pay the purchase price when it became due and plaintiff brought this action in the United States District Court for the Western District of Oklahoma against the defendant seeking damages for breach of the contract.

Upon motion of the defendant, the Court dismissed the action for lack of in personam jurisdiction over the defendant. The plaintiff appealed.

## ISSUE ON APPEAL

Does the court have in personam jurisdiction over the defendant?

## STATEMENT OF FACTS

In January 1981, the plaintiff, Manley, owned a 50% interest in an oil and gas lease of a quarter section of land in Canadian County, Oklahoma, and was in the course of drilling a well thereon designated as "Allen No. 1".

To obtain funds to complete the well, Manley desired to sell a ten/twenty-fourths working interest in the lease.

On January 19, 1981, Manley went to Vancouver to see one "Hanspack", who had participated in other wells with Manley.

Hanspack was ill and not interested in the investment. Manley also talked to Iraj Besharat and Touraj Besharat about investing in the lease and they indicated an interest in purchasing a three/twenty-fourths working interest in the lease.

The defendant, Fong, learned of Manley's desire to sell an interest in the lease. Fong contacted Manley by telephone at his hotel and told him he was interested in investing in the well.

After preliminary discussions, the Besharats, Fong, and Manley, met with Fong's attorney, C. Lew, on January 27, 1981, to draw up a contract.

The contract as executed by the parties consisted in part of a printed form provided by Manley, modified by an addendum, drafted by Mr. Lew.

This contract provided that Besharats would purchase a three/twenty-fourths

---

\* Hatfield Chilson, Senior Judge, United States District Court for the District of Colorado, sitting by designation.

working interest in the lease and Fong would purchase a seven/twenty-fourths interest at a unit price of $15,750.00 for each one/twenty-fourths interest.

The addendum, among other things, required the purchasers to deposit 10% of the investment purchase price "in trust with C. Lew," and to pay the balance of the investment on or before February 3, 1981.

The purchasers deposited 10% of the purchase price with Mr. Lew and the agreement was executed by the parties on January 27.

The addendum also contained the following provision: "[T]his transaction shall be conditioned upon Mr. John Holland making physical inspection of the drill site and his satisfactory report to the participants by February 3, 1981." (Record, Vol. 1, p. 6).

The Besharats paid for and received their three/twenty-fourths interest in the lease and are not parties to this action.

Upon the execution of the contract, plaintiff returned to Oklahoma. The plaintiff's affidavit filed in this action, states in pertinent parts:

8. After we signed the agreement on January 27th, I flew back to Oklahoma that day. A couple of days after that, I talked to Mr. Holland by phone. He told me that Mr. Fong had instructed him not to inspect the well. I called Mr. Fong. He indicated that he did not intend to honor his contract. He called me back later that week, I believe on Saturday, and told me that he was not going to honor his contract. The next day, Sunday, February 1st, Mr. Claridge called me and told me that Mr. Fong wanted me to call Mr. Fong about going ahead with the deal. I called Mr. Fong, and we agreed, at Mr. Fong's suggestion, to meet in Denver on the 3rd or 4th of February so that Mr. Fong could deliver the money that was due under the agreement. Mr. Fong and I did so meet. Mr. Fong did transfer the money to the First National Bank of Denver. However, when we met, Mr. Fong once again decided not to honor the agreement, and flew out of Denver.

9. By the time Mr. Fong did not honor his agreement on February 3rd or 4th, the well had been logged. Once the well was logged, it was all but impossible to do anything about reselling the interest that Mr. Fong had changed his mind on. Further, when Mr. Fong left Denver, he flew to Hawaii, and he was out of contact for thirty days. I was unable to get hold of him to do anything about mitigating the loss or attempting to solve the problem in some other manner.

10. The well did come in commercial quantities of oil and gas, and has been producing to this date.

11. Mr. Fong's contract and breach thereof caused me to be unable to honor my agreement with the driller to pay for a portion of the completion cost of the well, and I lost over 3% of the well in earned interest because of Mr. Fong's breach of his agreement.

Record, Vol. I, p. 36.

On March 16, 1981, the plaintiff commenced this action.

The defendant moved to dismiss the complaint on two grounds:

(a) That the court lacks jurisdiction over the person of the defendant, and,

(b) the complaint fails to state a claim upon which relief may be granted.

On August 3, 1981, the court, by written order, denied both motions.

With respect to the alleged lack of jurisdiction, the court stated in pertinent parts:

Construing the facts most favorable to the plaintiff, the defendant contracted to purchase an interest in real property in Oklahoma. The defendant had several telephone conversations with the plaintiff in Oklahoma, and the defendant met the plaintiff in Denver, Colorado, allegedly to pay him the money due on the contract, although he did not pay him.

The question is whether a contract to purchase real estate in Oklahoma is sufficient to confer jurisdiction under 12 O.S. § 1701.3. Oklahoma recognizes the doctrine of equitable conversion whereby

the execution of a contract to purchase an interest in real estate vests equitable title in the purchaser. *Alfrey v. Richardson* [204 Okl. 473] 231 P.2d 363 (Okla.1951). An oil and gas lease is an interest in real estate. *Jones v. Towner Production Co.*, 120 F.2d 779 (10th Cir. 1941).

It is undisputed that the contract was either an option to purchase or a contract to purchase a certain percentage of plaintiff's 50% interest in an oil and gas lease. The Court finds that when defendant signed what must for purposes of the motion be construed as a contract to purchase real property in Oklahoma, he brought himself within the bounds of *Hanson v. Denckla*, 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283] (1958), and purposely availed himself of the privilege of owning property within this state and invoking the benefits and protections of its laws.

The court finds that at least a prima facie showing of jurisdiction has been made sufficient to overcome Defendant's Motion to Dismiss. Whatever degree of proof is required initially, plaintiff must have proved by the end of the trial the jurisdictional facts by a preponderance of the evidence. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). Accordingly, defendant's Motion to Dismiss, to the extent that it is based on defendant's contention that this Court lacks in personam jurisdiction over him, is denied without prejudice to its being reconsidered at trial. Record, Vol. I, pp. 41–2.

Defendant moved the court to reconsider the dismissal of the jurisdictional motion.

The court heard the motion to reconsider on the briefs and affidavits of the parties and on October 5, 1981, entered a written order dismissing the complaint for lack of in personam jurisdiction.

The October 5 order states:

Defendant has submitted supplemental authorities which convinces the Court that the defendant's Motion to Reconsider should be granted....

. . . .

Whether a nonresident defendant served outside the forum state has sufficient minimum contacts with the forum state to warrant the latter's exercise of *in personam* jurisdiction over the nonresident defendant necessarily depends on the particular facts of each case. *Premier Corporation v. Newsom*, 620 F.2d 219 (10th Cir.1980), citing to *Kulko v. California Superior Court*, 436 U.S. 84 [98 S.Ct. 1690, 56 L.Ed.2d 132] (1978). See also: *Luckett v. Bethlehem Steel Corporation*, 618 F.2d 1373 [10th Cir. 1980).

The Court must examine the law of Oklahoma to determine whether Dexter Fong's actions gave rise to those minimum contacts within Oklahoma upon which *in personam* jurisdiction could be predicated.

The parties agree that the only possible statutory basis for assertion of jurisdiction in this case is 12 O.S. 1971 § 1701.3(a)(5) which permits exercise of jurisdiction to a cause of action or claim for relief arising from a person's "... having an interest in, using, or possessing real property in this state...."

Accordingly, the Court must determine whether Dexter Fong acquired an equitable interest in real property in Oklahoma by the execution of the contract in Canada.

. . . .

The question is whether signing a contract to pay a certain amount in the future for a future conveyance of land after certain conditions precedent have been performed creates equitable title in the purchaser where he places 10% of the purchase price in escrow.

Defendant has submitted authorities which convince the Court that Oklahoma adheres to the rule that a contract to convey land at a future date upon performance of certain acts and payments does not create equitable title in the purchaser until he performs the acts and makes the payments agreed upon. *Parks v. Classen Company*, [174 Okl.

237] 49 P.2d 1101 (Okla.1935); *Blakely v. McCrory*, 274 P.2d 1013 (Okla.1954); *Sutton v. Commissioners of Internal Revenue*, 95 F.2d 845 (10th Cir.1938).

Record, Vol. I, pp. 65–68.

We have carefully reviewed these cases to try and ascertain why the trial court relies on these cases and ignores *Alfrey v. Richardson*, 204 Okl. 473, 231 P.2d 363 (1951), which the trial court cited in its order of August 3, 1981, to support its statement that: "Oklahoma recognizes the doctrine of equitable conversion whereby the execution of a contract to purchase an interest in real estate vests equitable title in the purchaser." (Record, Vol. I, p. 41).

The trial court also ignores in its order of August 3, 1981, the cases cited in *Alfrey* stating the same rule, namely, *Scott-Baldwin Co. v. McAdams*, 43 Okl. 161, 141 P. 770 (1914); *Adams v. White*, 40 Okl. 535, 139 P. 514 (1914); *Whale v. Pearson*, 201 Okl. 619, 208 P.2d 552 (1949).

In *Whale v. Pearson*, the Oklahoma Supreme Court stated: "It is well settled in this state that a contract for the sale of land, bona fide, made for a valuable consideration vests the equitable interest in the vendee from the time of the execution of the contract." *Id.* 208 P.2d at 556.

Clearly the weight of authority in Oklahoma supports the rule set forth in *Alfrey* and the cases cited therein and we hold that this rule is applicable in this case, and that the trial court erred in failing to apply that rule to the facts of this case.

The trial court in its order of October 5, 1981, states:

The contract in question required the plaintiff to convey to the defendant, upon payment of the entire consideration, a $^{10}/_{24}$ interest in the Oklahoma oil well. This was conditioned upon the defendant's sending someone to inspect the well. This condition was not performed and the plaintiff received no money on the contract.

Record, Vol. I, p. 67.

We assume that the trial court, by this statement, held that since this condition precedent was not performed, the contract never became effective.

■ We point out, however, that it is uncontroverted that a couple of days after the contract was executed, Fong instructed Holland not to inspect the well. By this action the defendant, Fong, waived performance of the condition precedent, and we so hold.

■ We hold that upon the execution of the contract and Fong's waiver of the condition for inspection of the well site, Fong was vested with an equitable interest in real property in Oklahoma and thereby became subject to Oklahoma's long arm statute, (Okla.Stat.Ann. tit. 12, § 1701.03 (West 1980)) which provides in pertinent parts:

(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action or claim for relief arising from the persons:

. . . .

(5) having an interest in, using, or possessing real property in this state.

This statute clearly gives the State of Oklahoma personal jurisdiction over the defendant, Fong, under Oklahoma law.

■ There remains for consideration the requirements of *International Shoe Company v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) wherein the Supreme Court stated:

[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

We have previously held that Fong owned an equitable interest in the oil and gas lease which by Oklahoma law is an ownership of an interest in real estate.

By virtue of such ownership, he became a party to the activity in Oklahoma not only relating to the drilling of the well, but also to the activities in the production of oil and

gas therefrom and the marketing and sale of the oil and gas produced and all other related activities necessary to make the investment profitable.

By virtue of such ownership, Fong availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. See *Hanson v. Denckla*, 357 U.S. 235 at 253, 78 S.Ct. 1228 at 1239, 2 L.Ed.2d 1283 (1958).

We conclude that the jurisdiction of the Oklahoma court does not offend "traditional notions of fair play and substantial justice."

We hold that the trial court erred in dismissing this action for lack of in personam jurisdiction.

IT IS THEREFORE ORDERED that the order of the trial court dismissing this action for lack of in personam jurisdiction is hereby reversed and this matter is hereby remanded to the trial court for further proceedings not inconsistent with this opinion and order.